GABRIEL SANDOVAL FIGUEROA, ETC., demandante y recurrido, *v.* PUERTO RICAN LIFE INSURANCE COMPANY, demandada y recurrente.

*Número:* R-69-331       *Resuelto:* 13 de octubre de 1970

*Rieckehoff, Calderón, Vargas & Arroyo,* abogados de la recurrente; *Pedro A. Otero Fernández, Octavio Malavé Torres y Lygia Diversé Verges,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Lydia Esther Ortiz, maestra de escuela, residente en Bayamón, aceptó comprar una póliza de vida que le fue ofrecida mediante una carta circular que se distribuyó entre

los miembros de la Asociación de Maestros. Dicha carta circular describía la póliza como "un seguro de término sobre sus vidas que garantiza el pago de las hipotecas que ahora o en el futuro graven sus respectivos hogares." Según la citada oferta los interesados debían constituir un riesgo normal y los menores de 60 años no tenían que someterse a examen médico.

En 20 de agosto de 1964 Lydia Esther llenó el formulario de solicitud de la póliza. Dicho formulario contiene un número de preguntas que los solicitantes tienen que contestar haciendo una marca frente a las palabras "Sí" o "No". Al llenar estos blancos la solicitante del caso de autos contestó en la afirmativa que su estado de salud era bueno; no contestó una pregunta en relación a si en los últimos diez años anteriores había sufrido alguna enfermedad u operación o había estado bajo tratamiento médico; y negó haber padecido de ciertas condiciones que se detallaron entre las cuales se incluía el cáncer. La solicitud de seguro por $13,500.00 fue aprobada por la compañía aseguradora sin previo examen médico.

En 25 de octubre de 1964 Lydia Esther murió a consecuencia de un cáncer en el colon, a la edad de 29 años. Cuando el aquí demandante, Gabriel Sandoval Figueroa, viudo de Lydia Esther y beneficiario de la póliza, quiso cobrar la misma la aseguradora se negó a pagarla y le informó por escrito que la "razón fundamental" para desestimar su solicitud consistía en que la asegurada especificó que no estaba padeciendo de ninguna enfermedad, incluyendo cáncer; que su muerte debida a un cáncer ocurrió en octubre 25; que la póliza fue emitida por la compañía en septiembre 4 lo que "demuestra" que a la fecha de la emisión de la póliza la asegurada se encontraba ya padeciendo de esa enfermedad.

Entra aquí en juego el Art. 11.100 del Código de Seguros, 26 L.P.R.A. sec. 1110, el cual lee como sigue:

"Todas las declaraciones y descripciones en una solicitud de póliza de seguro o en negociaciones para la misma, hechas por el asegurado o a su nombre, se entenderá que son *representaciones* y *no garantías*. La impostura, las omisiones, el encubrimiento de hechos y las declaraciones incorrectas no impedirán el cobro con arreglo a la póliza, a menos que:

(1) Sean fraudulentos; o

(2) Que sean materiales, bien para la aceptación del riesgo, o para el peligro asumido por el asegurador; o

(3) El asegurador de buena fe no hubiera expedido la póliza, no hubiera expedido la póliza por una cantidad tan grande o no hubiera provisto cubierta con respecto al riesgo resultante en la pérdida, de habérsele puesto en conocimiento de los hechos verdaderos, como se requería en la solicitud para la póliza o de otro modo.

Cuando el solicitante incurra en cualquiera de los actos enumerados en los apartados (1), (2) y (3) de esta sección se impedirá el cobro solamente cuando el acto u omisión de que se trate hubiere contribuido a la pérdida objeto de la causa de acción." (Énfasis nuestro.)

Como podemos percatarnos, el problema gira en torno a si a la fecha en que suscribió la solicitud de seguro, en 20 de agosto de 1964, Lydia Esther *sabía* que estaba padeciendo de cáncer. Si lo sabía, la posición de la compañía aseguradora sería correcta pues el encubrimiento de ese hecho y su correspondiente declaración incorrecta serían en ese caso "materiales" para la aceptación del riesgo asumida por el asegurador. Inciso (2) del artículo antes citado. Por el contrario si la asegurada no sabía que estaba padeciendo de cáncer entonces su contestación fue honrada y el caso cae dentro de los riesgos normales que se corre la aseguradora al aceptar solicitudes de seguro sin previo examen médico.

La posición de la aseguradora es que Lydia Esther mintió al contestar en el formulario que se encontraba en buen estado de salud y que eso era imposible para esa fecha, 20 de agosto de 1964, porque murió de cáncer el 25 de octubre de ese año.

■ El Tribunal Superior, luego de recibir la prueba oral y documental, determinó que la causante nunca informó a sus médicos que tuviese conocimiento de que padecía de un cáncer y que tampoco los médicos se lo informaron a ella. Determinó que la causante contestó las preguntas del formulario de solicitud de seguro hasta donde ella tenía conocimiento y en consecuencia condenó a la aseguradora a pagar el importe de la póliza.

A la causante se le hizo una biopsia en 11 de septiembre de 1964 y fue operada el día 14 de ese mes. Los cirujanos encontraron que el cáncer era tan extenso que era inoperable. Lydia Esther murió, como antes dijimos, el 25 de octubre de ese año.

Como Lydia Esther falleció, la determinación de si ella sabía o no que estaba enferma al momento de solicitar la póliza es una que los tribunales tienen que hacer a base de la evidencia indirecta disponible. Vayamos al récord.

El Dr. Juan Ramón Vilaró Grau declaró que en septiembre de 1964 él trató a Lydia Esther Ortiz; que el esposo de ella lo fue a buscar a él para decirle que su esposa estaba mal, con un posible tumor del intestino y que necesitaba una operación. Declaró también que él vio una biopsia con fecha de 30 de agosto de ese año (T.E. 17–21); que más adelante, en unión al Dr. Blas Ferraiouli, operó a la paciente y que ésta tenía un cáncer del intestino grueso. También declaró que en ningún momento la paciente le dijo a él que ella sabía que padecía de cáncer. (T.E. 40); no declaró que a él le constase que ella lo sabía; declaró que le parecía que el esposo de Lydia Esther sí lo sabía.

El Dr. Blas Ferraiouli declaró que la señora de Sandoval fue operada en 14 de septiembre de 1964. Al serle preguntado sobre el tiempo de la incepción del cáncer contestó:

"Es un poco difícil determinarlo exactamente cuando ésto ocurre, porque en algunos pacientes se desarrolla el cáncer con más rapidez que otros, pero este récord es un récord verdadero.

Aquí dice que esta señora fue sometida a una operación en el
1962; que se le sacó la apéndice y no le encontraron eso. En
agosto de 1963 fue sometida a una operación también, una
cesárea y no se le encontró cáncer, o no fue advertido por el
Cirujano que la operó, que era un ginecólogo." T.E. pág. 52.

Más adelante el Dr. Ferraiouli declaró como sigue:

"Ahora, doctor, ¿usted podría asegurarnos en estos momen-
tos, que esa señora sabía a la fecha de agosto 20, que ella tenía
cáncer?

¿De qué año?

De 1964.

Era difícil.

¿Era difícil?

Sí. (Con la cabeza.)

En otras palabras, ¿que ella no lo hubiese advertido?

Sí. (Con la cabeza.)" T.E. pág. 58.

También declaró que el cáncer del colon no es común en
Puerto Rico; que más del 80 por ciento de ese tipo de cáncer
se encuentra en personas que pasan de 40 años de edad;
y que no era común que ocurriese en una persona joven (29
años) como era Lydia Esther Ortiz. T.E. 60.

Más adelante continuó declarando el doctor como sigue:

"Doctor, según usted lo advirtió ahorita, que los síntomas
de este cáncer son difíciles de diagnosticar, yo le pregunto, ¿si
en este caso en particular, puede haber sido que esta señora no
advirtiera los síntomas del cáncer?

Es que ningún paciente sabe lo que tiene. Ningún paciente
sabe si tiene cáncer o no lo tiene.

¿Y ella no lo sabía si lo tenía?

No lo sabía." T.E. 64.

.    .    .    .    .    .    .    .    .

Doctor, ahora yo le voy a mostrar a usted una solicitud de
seguro que hizo esta señora y le voy a pedir que lea con cuidado
el interrogatorio número cuatro y dígame, ¿si una persona que
sufre de la sintomatología, de la enfermedad de la cual murió
esta persona, puede el 20 de agosto contestar todas estas pre-
guntas en la negativa?

¿El 20 de agosto?

El 20 de agosto. Fíjese la fecha de esa solicitud, el 20 de agosto.

Puede contestarlo en negativa.

¿Puede contestarlo en negativa?

Sí. (Con la cabeza).

¿Puede contestarla?

Sí.

¿Puede no haber sentido nunca ningún síntoma, que le indujeran a contestar estas preguntas en la afirmativa?

¿Y esta pregunta, la marcada con el número cinco?

Déjeme contestar la del Juez primero. De acuerdo con esta contestación, ella estaba decidiendo honestamente que no tenía nada abdominal." T.E. págs. 66–67.

■ Aceptando que algunas de las contestaciones que en el formulario de solicitud de seguro dio la causante no fuesen correctas, o que hubiese omitido alguna información (por ejemplo, el parto por cesárea) dichas omisiones o informaciones incorrectas no eran materiales para la aceptación del riesgo y las mismas no justifican el no pago de la póliza. Una contestación falsa dada a sabiendas sobre el padecimiento del cáncer sí hubiese sido material pues ese padecimiento causó la muerte de Lydia Esther. El Sub-Comité Especial para el estudio del proyecto de ley que estableció el Código de Seguros de Puerto Rico se expresó sobre el particular como sigue:

"De acuerdo con esta regla más moderna, que es la generalmente aceptada en las jurisdicciones norteamericanas, el hecho material en relación al cual el asegurado no dijo la verdad tiene que haber contribuído a su muerte o incapacidad para impedir el cobro de la póliza. De otra manera el hecho material de por sí no será considerado como tal a los efectos de determinar la validez del contrato de póliza." *Diario de Sesiones. Senado* (1957), Vol. IX, p. 1424.

A base de lo anterior concluimos que el error señalado —que el Tribunal sentenciador erró en la apreciación de la prueba—no se cometió y *se confirmará la sentencia dictada*

*en este caso por el Tribunal Superior, Sala de San Juan, en 7 de marzo de 1969.*

El Juez Presidente, Señor Negrón Fernández y el Juez Asociado Señor Santana Becerra, no intervinieron.