EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rafael Rivera Labarca, et als.<br><br>Demandantes-Peticionarios<br><br>v.<br><br>Puerto Rican-American Insurance Co., et als.<br><br>Demandados-Recurridos<br><br>Fundador Molina Soto, Etc.<br><br>Demandados | Certiorari<br><br>2006 TSPR 26<br><br>166 DPR \_\_\_\_ |

Número del Caso: CC-2003-507

Fecha: 17 de febrero de 2006

Tribunal de Circuito de Apelaciones:

        Circuito Regional III de Arecibo/Utuado

Juez Ponente:

        Hon. Jorge L. Escribano Medina

Abogada de la Parte Recurrida:

        Lcda. Brunilda M. Figueroa Náter

Abogado de la Parte Peticionaria:

        Lcdo. Juan E. Taboas Santiago

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael Rivera Labarca, *et als*.

    Demandantes-Peticionarios

        v.

Puertorican-American Insurance Co., *et als*.

    Demandados-Recurridos

Fundador Molina Soto, Etc.

    Demandados

CC-2003-507      Certiorari

## SENTENCIA

San Juan, Puerto Rico, a 17 de febrero de 2006.

El caso del epígrafe nos brinda la oportunidad de pasar juicio sobre la validez y exigibilidad de una póliza de seguros adquirida por el arrendatario de un vehículo de motor, en consideración a que el contrato de arrendamiento de dicho automóvil fue cedido a un tercero sin la autorización del arrendador y sin haberlo informado a la aseguradora.

### I

Según surge del expediente, el Dr. Carlos Torres Cabret (en adelante señor Torres Cabret) suscribió un contrato de arrendamiento con Popular Leasing & Rental, Inc. (en adelante Popular Leasing) mediante el cual adquirió el

uso y disfrute de un vehículo de motor, marca Porsche Boxster del año 1997, a cambio del pago de unos cánones de arrendamiento. El referido contrato dispuso que el titular del vehículo era Popular Leasing y que el señor Torres Cabret no podía vender o ceder su interés en el arrendamiento ni subarrendar el mencionado automóvil.

Posteriormente, el señor Torres Cabret adquirió una póliza de seguro para este vehículo a través de Puerto Rican American Insurance Company (en adelante PRAICO), cubierta que se extendería desde el 3 de septiembre de 1999 al 3 de septiembre del 2000. En ésta se declaró a Popular Leasing como beneficiaria y entidad financiera. Además, se hizo constar que la residencia del señor Torres Cabret estaba localizada en San Juan, Puerto Rico. Sin embargo, se informó que el referido vehículo iba a ser principalmente guardado en la calle Tomás Dávila del municipio de Barceloneta. Esta dirección era la correspondiente a la residencia del Dr. Rafael Rivera Labarca (en adelante señor Rivera Labarca), según este mismo alega.

Un día después de haber entrado en vigor esta cubierta, entiéndase, el 4 de septiembre de 1999, el señor Torres Cabret "vendió" el automóvil objeto del arrendamiento al señor Rivera Labarca, según consta en la declaración jurada de este último. En dicha declaración, además, se afirma que el señor Rivera Labarca asumía el pago del arrendamiento a Popular Leasing y todas las

responsabilidades inherentes a la posesión del vehículo, exonerando con ello al señor Torres Cabret de toda responsabilidad relacionada con el mismo. Dicho acuerdo no fue informado a Popular Leasing ni a PRAICO.

Seis días después, el señor Rivera Labarca gestionó a través de un agente de PRAICO una solicitud para que éste fuera incluido como conductor asegurado o adicional en la póliza adquirida por el señor Torres Cabret. Este último continuó siendo el asegurado principal. En dicho documento se hizo constar que el vehículo no era arrendado. Tampoco se modificó la información referente al lugar de estacionamiento o garaje en el cual sería guardado el automóvil.

El 4 de febrero de 2000, el vehículo arrendado sufrió daños por motivo de un incidente. Conforme alegó el señor Rivera Labarca:

> el automóvil sufrió un accidente cuando se encontraba estacionado frente a la marquesina de su residencia, aparentemente sufrió un desperfecto mecánico quedando la caja de cambios en neutro lo que provocó que iniciara la marcha hacia atrás sin estar siendo conducido por nadie, debido a la topografía del lugar donde reside el Dr. Rivera Labarca, cayendo por un precipicio de aproximadamente 75 pies de profundidad sufriendo daños que montaron a la suma de $22,247.03 aproximadamente por concepto de hojalatería y pintura. Demanda Enmendada, alegación núm. 8.

Así las cosas, el señor Rivera Labarca informó a la policía lo acontecido y, posteriormente, solicitó a PRAICO los beneficios de la póliza de seguro. Luego de la investigación pertinente, PRAICO cursó una misiva al

señor Torres Cabret en la cual comunicó que no procedía la reclamación de los daños del vehículo. Concluyó que, al éste transferir el vehículo al señor Rivera Labarca, había cedido sus derechos y deberes bajo la póliza sin el consentimiento escrito de la aseguradora, en violación a las disposiciones del contrato de seguro. Ante este hecho, PRAICO determinó que la póliza sólo mantuvo su vigencia hasta el 4 de septiembre de 1999, día en que se celebró la transacción con el vehículo.

En vista de lo anterior, el señor Rivera Labarca, su esposa y su sociedad legal de gananciales presentaron ante el tribunal de instancia una demanda contra PRAICO y contra el agente que le vendió el seguro del automóvil. Alegaron, en síntesis, que éstos incumplieron con el contrato de seguro y solicitaron todos los daños relacionados al accidente del vehículo. Posteriormente, la demanda fue enmendada para incluir como demandante al señor Torres Cabret y, como demandada, a la sociedad legal de gananciales compuesta por el agente de seguros y su esposa.

Tras varios incidentes procesales, tanto PRAICO como los demandantes solicitaron al tribunal que dictara sentencia sumaria a su favor. En vista de ello, el foro de instancia declaró con lugar la demanda. Resolvió que el señor Torres Cabret no podía vender el automóvil al señor Rivera Labarca sin la autorización de Popular Leasing, por lo que dicho negocio no surtió efecto

alguno. Además, razonó que el señor Rivera Labarca había sido aceptado por PRAICO como conductor asegurado. Dado que el accidente ocurrió dentro de la vigencia de dicha póliza, dictaminó que PRAICO era responsable de cubrir los daños. Igualmente, le impuso el pago de honorarios de abogado y las costas del litigio. La demanda contra el agente de seguros fue desestimada.

Inconforme, PRAICO acudió al entonces Tribunal de Circuito de Apelaciones. El foro apelativo intermedio revocó la decisión de instancia. Concluyó que se debía celebrar una vista para que PRAICO tuviera la oportunidad de demostrar que no hubiera expedido la referida póliza si hubiera conocido que el vehículo asegurado era uno arrendado, toda vez que no fue informada de ello por el señor Rivera Labarca.

De dicha determinación acuden ante nos los señores Rivera Labarca y Torres Cabret. Arguyen, en esencia, que no procede la celebración de la vista, según dictaminada por el tribunal apelativo, para determinar si PRAICO hubiera o no emitido la póliza de seguro. Asimismo, aducen que procede la imposición de honorarios de abogado. Expedimos el auto solicitado en reconsideración. Estando el caso sometido con la comparecencia de ambas partes, resolvemos.

II

A

En nuestra jurisdicción, los contratos de arrendamiento de bienes muebles están regulados por la Ley Núm. 76 del 13 de agosto de 1994, según enmendada. 10 L.P.R.A. 2401 *et seq.* Este estatuto cumple el propósito de proveer unas salvaguardas a los arrendatarios y, al mismo tiempo, unas garantías a los arrendadores, con el fin de estimular la celebración de este tipo de contrato y lograr con ello un crecimiento económico. Art. 2 de la Ley Núm. 76.

Entre sus disposiciones, la Ley Núm. 76 regula lo referente a la titularidad del bien mueble objeto del arrendamiento. Esta establece que se considerará al arrendador como titular de dicho bien, y al arrendatario como su poseedor, quien podrá usarlo y disfrutarlo, siempre y cuando cumpla con las cláusulas estipuladas en el contrato. 10 L.P.R.A. sec. 2408. Sin embargo, cuando la cosa arrendada sea un vehículo de motor, se tendrá como su titular al arrendatario. *Id.* Esto último responde a que el legislador quiso liberar de responsabilidad al arrendador en casos de daños y perjuicios ocasionados por un vehículo de motor sujeto a contrato de arrendamiento. *Véase*, Ley Núm. 192 de 6 de septiembre de 1996 y su historial legislativo.

Igualmente, esta pieza legislativa preceptúa que:

> El arrendatario no podrá ceder el arrendamiento sin el consentimiento

> previo, por escrito, del arrendador. Si el arrendatario cede el arrendamiento, sin el debido consentimiento, se considerará como si la cesión no se hubiese efectuado. Art. 17 de la Ley Núm. 76, *supra*, 10 L.P.R.A. sec. 2415.

Además, dispone --como resguardo a favor del arrendador-- que éste puede exigirle al arrendatario la adquisición de un seguro sobre el bien arrendado por el término del contrato, el cual podrá ser requisito para su celebración. 10 L.P.R.A. sec. 2411. En dichas pólizas se debe incluir al arrendador como beneficiario y asegurado adicional, de manera que el interés de éste sobre el bien quede protegido. *Id.* De hecho, como norma general, los contratos de arrendamiento contienen este tipo de garantías destinadas a proteger al arrendador de sucesos imprevistos que puedan menoscabar la propiedad. *CNA Casualty of PR v. Torres Díaz*, 141 D.P.R. 27 (1996).

B

Por otra parte, el contrato de seguros es un acuerdo mediante el cual una persona se obliga a indemnizar a otra, o a proveerle un beneficio específico o determinable, ante la ocurrencia de un suceso incierto pero previsto en el mismo. 26 L.P.R.A. sec. 102; *Cooperativa de Ahorro y Crédito Oriental v. Oquendo Camacho*, res. el 28 de febrero de 2003, 2003 TSPR 26. La relación entre el asegurador y el asegurado, por ende, es una de naturaleza contractual, y sus acuerdos constituyen la ley entre las partes. *López Castro v. Atlantic Southern Ins. Co.,* res. el 11 de febrero de 2003, 2003

TSPR 12; *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139 (1996).

Este contrato está extensamente reglamentado por el Código de Seguros de Puerto Rico, 26 L.P.R.A. 101 *et seq.*, no obstante, pueden aplicársele de manera supletoria las disposiciones de nuestro Código Civil. *López Castro v. Atlantic Southern Ins. Co.,* supra; *Vélez Rivera v. Bristol-Myers Squibb, P.R.,* res. el 17 de septiembre de 2002, 2002 TSPR 123; *Mun. of San Juan v. Great Ame. Ins. Co.,* 117 D.P.R. 632 (1986). Conforme a ello, en el contrato de seguros, al igual que en los demás contratos, deben concurrir tres elementos indispensables para su validez: (1) consentimiento de los contratantes; (2) objeto cierto materia del contrato, y (3) causa de la obligación que se genera. *Díaz Ayala et al. v. E.L.A.,* 153 D.P.R. 675 (2001); *Gen. Accid. Ins. Co. v. Ramos,* 148 D.P.R. 523 (1999).

Este tipo de contrato, además, reviste la característica particular de que su formulación exige la conducta de buena fe de los contratantes en su máxima expresión.

> Aunque se presume que los contratos regidos por el Código Civil son de buena fe, los contratos de seguros regidos por el Código de Seguros son de extrema buena fe. Se requiere un mayor o extremo grado de buena fe en las negociaciones precedentes a la perfección o consumación del contrato de seguro toda vez que los riesgos o peligros a que está expuesto el objeto asegurable sobre los cuales se pacta, son basados en las meras representaciones del propuesto asegurado que inducen al asegurador a

aceptar la oferta hecha por el [sic] éste.
R. Cruz, *Derecho de Seguros*, 1ra ed., San
Juan, Pubs. JTS, 1999, sec. 3.3, pág. 14.

Sin embargo, no toda falsa representación o declaración de parte de un asegurado durante la formulación del contrato de seguro impedirá el cobro de los beneficios dispuestos en la póliza. Así surge del Art. 11.100 del Código de Seguros, el cual establece que:

Todas las declaraciones y descripciones en una solicitud de póliza de seguros o en negociaciones para la misma, hechas por el asegurado o a su nombre, se entenderá que son representaciones y no garantías. La impostura, las omisiones, el encubrimiento de hechos y las declaraciones incorrectas no impedirán el cobro con arreglo a la póliza, a menos que:

(1) Sean fraudulentos; o
(2) que sean materiales, bien para la aceptación del riesgo, o para el peligro asumido por el asegurador; o
(3) el asegurador de buena fe no hubiera expedido la póliza, no hubiera expedido la póliza por una cantidad tan grande o no hubiera provisto cubierta con respecto al riesgo resultante en la pérdida, de habérsele puesto en conocimiento de los hechos verdaderos, como se requería en la solicitud para la póliza o de otro modo.
Cuando el solicitante incurra en cualquiera de los actos enumerados en los apartados (1), (2) y (3) de esta sección se impedirá el cobro solamente cuando el acto u omisión de que se trate hubiere contribuido a la pérdida objeto de la causa de acción.
26 L.P.R.A. sec. 1110.

El propósito que persigue este inciso del Código de Seguros es evitar que una declaración falsa sobre un asunto pertinente a la aceptación del riesgo pueda anular una póliza en aquellos casos en que el hecho incierto u

ocultado no está vinculado en forma alguna al daño sufrido. *Serrano Ramírez v. Clínica Perea, Inc.*, 108 D.P.R. 477 (1979). Según éste, se anula la póliza cuando la aseveración falsa o la información omitida no sólo es pertinente a la apreciación del riesgo sino también a su ocurrencia. *Id.*; *Sandoval v. P.R. Life Ins. Co.*, 99 D.P.R. 287 (1970).

Este precepto legal descansa en la premisa de que el asegurado no es infalible en sus declaraciones sobre la condición de riesgo al cual está expuesto el objeto asegurable. R. Cruz, *op cit.*, pág. 15. Sin embargo, mediante esta disposición, el asegurador también queda protegido de un asegurado inescrupuloso que lo induce a aceptar el riesgo ofrecido a través de la ocultación de hechos materiales y omisiones de importancia para luego intentar reclamar su aparente derecho de indemnización. *Id.*, a las págs. 15-16.

Vista esta exposición del derecho, veamos su aplicación a los hechos del caso de autos.

### III

Según se desprende de la declaración jurada del señor Rivera Labarca, el 4 de septiembre de 1999, el señor Torres Cabret le "vendió" a éste el automóvil marca Porsche Boxter del 1997, asumiendo el primero el pago de los cánones de arrendamiento a Popular Leasing y todas las responsabilidades inherentes a la posesión del vehículo. Además, el señor Rivera Labarca exoneró al

señor Torres Cabret de toda responsabilidad directa o indirectamente relacionada con el referido automóvil. Surge también del expediente que el mencionado vehículo se encontraba en posesión del señor Rivera Labarca al momento del accidente. A base de estos hechos, PRAICO entendió que el señor Torres Cabret había cedido al señor Rivera Labarca sus derechos y deberes bajo la póliza de seguro, contrario a lo expresamente estipulado en dicho contrato. Por esta razón, PRAICO declaró cancelada la póliza sobre el vehículo, efectivo el 4 de septiembre de 1999.

Sin embargo, al tenor del Art. 17 de la Ley Núm. 76, *supra*, el señor Torres Cabret no tenía la potestad ni el derecho de transferir o ceder el referido vehículo al señor Rivera Labarca sin el consentimiento escrito de Popular Leasing. El efecto impuesto por el ordenamiento jurídico sobre dicha cesión es que la misma se considera como si no se hubiera efectuado. En vista de lo anterior, y por ministerio de ley, el señor Torres Cabret continuó teniendo un interés asegurado por la póliza. Conforme a ello, la razón aducida por PRAICO para cancelar la póliza de seguro otorgada al señor Torres Cabret se desvaneció.

Ahora bien, el asunto medular al cual dirigimos nuestra atención es el siguiente: ¿es PRAICO responsable, aún así, de indemnizar bajo la aludida póliza de seguro los daños sufridos por el vehículo arrendado? Contestamos en la negativa.

El antiguo Tribunal de Circuito de Apelaciones advirtió que el señor Rivera Labarca había omitido informar a PRAICO, en la solicitud que gestionó como conductor adicional, que el vehículo era arrendado. Entendió que, en vista de lo dispuesto en el Art. 11.100 del Código de Seguros, PRAICO debía demostrar que no hubiera expedido dicha póliza si hubiera conocido tal hecho. No podemos estar de acuerdo con el razonamiento del foro apelativo intermedio, pues los documentos que obran en el expediente nos imponen otra conclusión.

En este caso, no estamos ante una mera omisión o descuido en las representaciones que el asegurado ha hecho al asegurador en cuanto a la condición de riesgo al que estaba expuesto el objeto asegurable. El asunto es más trascendental y delicado. El contrato de seguro objeto de nuestro análisis forma parte de un esquema configurado por los señores Torres Cabret y Rivera Labarca para eludir sus obligaciones contractuales con Popular Leasing y PRAICO, y obtener de ellos beneficios a los que, contractualmente, no tendrían derecho. Nos explicamos.

No está en controversia que el señor Torres Cabret adquirió de Popular Leasing, en concepto de arrendatario, el uso y disfrute del vehículo y luego lo transfirió al señor Rivera Labarca. Sin embargo, el contrato de arrendamiento claramente establecía que el vehículo era y continuaba siendo propiedad de Popular Leasing, quien

mantendría la titularidad exclusiva sobre el mismo. Además, el señor Torres Cabret se comprometió a no tomar ninguna acción inconsistente con la titularidad de Popular Leasing sobre el vehículo, ni a reclamar ser el dueño del automóvil para ningún propósito. Por último, se le informó al señor Torres Cabret que el arrendamiento le fue otorgado a base de su propio crédito por lo que no podía vender o ceder su interés en el arrendamiento a ninguna otra persona, ni subarrendar el vehículo. El señor Torres Cabret certificó con su firma tener conocimiento de éstas y todas las cláusulas acordadas en el mencionado contrato.

Aun así, Torres Cabret entregó la posesión, el uso y el disfrute del automóvil al señor Rivera Labarca. Este último conocía la existencia del arrendamiento, pues asumió expresamente el pago de los cánones, además de que la licencia del vehículo expedida por el Departamento de Transportación y Obras Públicas reconocía como su titular a Popular Leasing. No surge del expediente que el señor Rivera Labarca exigiera al señor Torres Cabret que traspasara la titularidad del vehículo a su nombre.

Además de lo anterior, el señor Torres Cabret estaba obligado contractualmente a mantener asegurado el vehículo y a designar como beneficiario a la entidad arrendadora. Debido a ello, adquirió una póliza de seguro a través de PRAICO en la cual se acordó que no podía ceder los derechos y deberes bajo ésta sin el

consentimiento escrito del asegurador.[1] Convenientemente, justo un día después de haber entrado en vigor la cubierta del seguro, el señor Torres Cabret traspasó el automóvil al señor Rivera Labarca. Consciente de que el señor Torres Cabret no podía cederle los derechos bajo la póliza sin consentimiento escrito del asegurador,[2] el señor Rivera Labraca solicitó cubierta a PRAICO como conductor adicional, representando al agente de seguros y a la aseguradora que el vehículo no era arrendado.[3] Del expediente no surge que los señores Torres Cabret y Rivera Labarca hayan realizado gestiones para solicitar el consentimiento escrito de PRAICO, de manera que el primero pudiera ceder sus derechos y deberes bajo la

---

[1] La referida cláusula lee:

TRANSFERENCIA DE LOS INTERESES DE USTED EN ESTA PÓLIZA
A. Los derechos y deberes de usted bajo esta póliza no pueden cederse sin nuestro consentimiento por escrito. No obstante, si fallece un asegurado nombrado en las Declaraciones, proporcionaremos cubierta para [...] Póliza de Seguro, Parte F – Disposiciones Generales.
B.

[2] En su demanda enmendada, los señores Rivera Labarca y Torres Cabret alegaron:

Que el automóvil en cuestión se transfirió al Dr. Rivera Labarca por el Dr. Carlos Torres Cabret y, desde que adquirió dicho automóvil el Dr. Rivera Labarca, en o alrededor del 4 de septiembre de 1999, procedió a seguir pagando el mismo y, **consciente de que los derechos y deberes de la póliza en donde el asegurado era el Dr. Torres Cabret no podrían cederse sin consentimiento por escrito de la Aseguradora, se obtuvo por el Dr. Rivera Labarca la póliza de seguros** [...] (Énfasis suplido.) Demanda enmendada, alegación número 4.

[3] No podemos pasar por alto que, cuando un asegurado tiene conocimiento de la falsedad de su declaración, debemos presumir su intención de engañar. 2 *Couch on Insurance 3d*, sec. 31:82.

póliza. Claro está, dicho trámite implicaba la divulgación de un acuerdo entre estos señores que estaba prohibido por el Art. 17 de la Ley Núm. 76 y por el contrato de arrendamiento. De esta manera, ambos médicos lograron soslayar las restricciones establecidas en los contratos de arrendamiento y de seguro para conseguir objetivos inconsistentes con el estado de derecho creado en virtud de éstos.

Ahora, acuden ante nos los señores Torres Cabret y Rivera Labarca, procurando los beneficios que nuestro ordenamiento jurídico le reconoce a los asegurados, ordenamiento que ellos mismos vulneraron, burlando con ello uno de los más elementales principios de nuestro sistema, la buena fe. En casos como el de autos, resalta la premisa en la cual se basa la doctrina de abuso del derecho: "un sistema de justicia, que se respete a sí mismo, está enmarcado en principios éticos generales y válidos, tales como la verdad y la buena fe". *El Vocero de P.R. v. Hernández Agosto*, 133 D.P.R. 413, 415 (1993)(Op. Concurrente del Juez Asociado señor Negrón García). No podemos permitir que el texto de la ley --en este caso, el Art. 17 de la Ley Núm. 76, *supra*, y el Art. 11.100 del Código de Seguros-- sea utilizado para amparar actos contrarios a la realización de la justicia; que frente al contenido ético y al espíritu objetivo de la norma legal no prevalezcan las maniobras tendentes a lograr un resultado distinto al perseguido con ella.

*Soriano Tavárez v. Rivera Anaya*, 108 D.P.R. 663, 673 (1979). Como hemos expresado en el pasado, la ley es un instrumento de la justicia, no viceversa. *Jordán-Rojas v. Padró-González*, 103 D.P.R. 813 (1975). Procede por tanto, que los señores Torres Cabret y Rivera Labraca asuman las consecuencias de su conducta antijurídica y experimenten en sus propios patrimonios sus efectos.[4]

IV

Por los fundamentos que preceden, se revoca la sentencia del entonces Tribunal de Circuito de Apelaciones y, por consiguiente, se desestima la demanda.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente con opinión escrita a la cual se une la Juez Asociada señora Fiol Matta.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

---

[4] No pasaremos juicio --aunque es digno de señalar-- sobre la inconsistencia entre la alegada dirección residencial del señor Rivera Labarca, provista en la solicitud de seguro como lugar principal en el que se guardaría el vehículo asegurado (Municipio de Barceloneta), y la dirección residencial del señor Rivera Labarca en donde ocurrió el accidente con dicho automóvil, según surge en todos los documentos relativos al referido incidente (Municipio de Florida). Nótese que la topografía del lugar en donde ocurrió el accidente, es decir, el declive del área que desemboca en una precipicio, es un hecho que, unido al desperfecto mecánico del vehículo, provocó directamente los daños reclamados. Además, PRAICO podía descansar en las declaraciones ofrecidas por el asegurado sobre el lugar principal para estacionar el vehículo, con el fin de determinar la prima de la póliza, según surge de la disposición titulada CAMBIOS en la Parte F de la Póliza de Seguro.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael Rivera Labarca, Et Als

    Demandante-Peticionario

       vs.

Puertorican Am. Insurance Co.,
Et. Als.                     CC-2003-507     Certiorari

    Demandados-Recurridos

      vs.

Fundador Molina Soto, Etc.

    Demandados

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se une la Juez Asociada señora FIOL MATTA.

San Juan, Puerto Rico, a 17 de febrero de 2006.

I

Es menester precisar los hechos del caso de autos, que no están todos debidamente relatados en la sentencia emitida por la mayoría del Tribunal. El 6 de marzo de 1999, mediante un contrato de arrendamiento con la compañía "Popular Leasing & Rental Inc." (en adelante Popular), el doctor Carlos Torres Cabret (en delante Torres) adquirió el derecho de uso y disfrute de un vehículo de motor marca "Porsche", modelo "Boxter" del 1997, valorado en $58,900. Torres también aseguró dicho vehículo mediante una póliza con la Puertorican American Insurance Company (en adelante PRAICO) **en la cual se incluyó como asegurado adicional a**

**Popular**. El contrato de seguro referido se extendía del 3 de septiembre de 1999 al 3 de septiembre del 2000.

El 4 de septiembre de 1999 Torres le "vendió" el referido automóvil al doctor Rivera Labarca (en adelante Rivera) mediante affidávit. Dicha transacción fue llevada a cabo sin solicitarle permiso a Popular, dueño del vehículo arrendado, y sin solicitarle permiso a PRAICO, la aseguradora. **El 10 de septiembre de 1999 un agente de PRAICO tramitó una solicitud de Rivera para que se le incluyese como conductor asegurado o adicional y, por alegada inadvertencia, en la solicitud se aseveró que el vehículo en cuestión no era arrendado.** El periodo de cubierta de la póliza era del 16 de septiembre de 1999 hasta el 16 de septiembre del 2000.

Así las cosas, el 14 de febrero del 2000, mientras se encontraba estacionado frente a la marquesina de Rivera, el vehículo en cuestión aparentemente sufrió un desperfecto mecánico que ocasionó que la caja de cambios quedara en neutro y provocó que el automóvil iniciara la marcha hacia atrás y cayera por un precipicio de aproximadamente 75 pies de profundidad.

Rivera informó el accidente a la policía y luego le hizo una reclamación a PRAICO para que cubriera los daños ocasionados al vehículo. Ante estos hechos, el 18 de abril de 2000, PRAICO emitió y notificó un aviso de cancelación de póliza. Indicó que la reclamación no podía ser procesada porque de conformidad con la parte F de las disposiciones

generales de la póliza de seguro[5], la transferencia del vehículo a Rivera ocasionó que la póliza estuviera vigente sólo hasta el 4 de septiembre de 1999. Es decir, que la póliza sólo estuvo vigente el día en que entró en vigor y el día en que se hizo la transferencia del vehículo. **Esto, a pesar de que Rivera continuó pagando las primas de la póliza aun después de dichos dos días de vigencia, y PRAICO aceptó los pagos**.

El 9 de enero de 2001 Rivera, su esposa y la sociedad legal de gananciales integrada por ambos entablaron un pleito civil sobre cumplimiento específico de contrato y daños y perjuicios contra PRAICO y el agente que le vendió el seguro, Fundador Molina Soto. Alegaron que PRAICO se había negado a honrar el compromiso contraído a través de la póliza adquirida, **a pesar de haber aceptado el pago de $1,789 en primas de seguro**. La demanda luego fue enmendada a los únicos efectos de incluir como parte demandada a la sociedad legal de gananciales integrada por Fundador Molina Soto y su esposa, y como reclamante a Torres, arrendatario del vehículo.

Luego de varios incidentes procesales, PRAICO presentó una moción en solicitud de sentencia sumaria y alegó que la compraventa del automóvil interrumpió la aplicabilidad de la póliza y que los derechos y deberes de Torres subsistieron sólo hasta el 4 de septiembre de 1999 debido a que no se le solicitó permiso para la transacción con

---

[5] "Los derechos y deberes de usted bajo esta póliza no pueden cederse sin nuestro consentimiento por escrito"

Rivera y, por lo tanto, no existía cubierta para la reclamación en cuestión.

El 3 de diciembre de 2002 el codemandado Fundador Molina Soto también solicitó una sentencia sumaria a su favor. Alegó que la potestad de aceptar o denegar una solicitud de una póliza de seguro no era suya sino de PRAICO y que no había incurrido en actuación negligente o culposa que conllevase responsabilidad por la pérdida en cuestión.

Por su parte, Rivera presentó su oposición a que se dictara sentencia sumaria a favor de PRAICO, y una solicitud para que se dictara sentencia sumaria a su favor. Alegó que, a pesar del traspaso en cuestión, Popular seguía siendo el dueño del vehículo, Torres era el arrendatario, y Rivera un asegurado adicional. También alegó que Torres no podía transmitir la titularidad del vehículo debido a que tenía únicamente derecho a su uso y disfrute como arrendatario, y que el acuerdo con Torres era nulo por ser contrario a la Ley Núm. 76 del 13 de agosto de 1994.[6]

El Tribunal de Primera Instancia denegó la moción de sentencia sumaria presentada por PRAICO. Declaró ha lugar la moción de sentencia sumaria presentada por Rivera y la moción de Fundador Molina Soto. Además, le impuso a PRAICO el pago de $1,000 dólares por concepto de honorarios de abogado y las costas del litigio.

---

[6] Dicha Ley dispone que "si el arrendatario cede el arrendamiento, sin el debido consentimiento, se considerará como si la cesión no se hubiese ejecutado" 10 LPRA sec. 2415

Con relación a la moción de Rivera, resolvió que al no haberse hecho el traspaso de título del vehículo conforme a lo que dispone la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 5035, y no haberse obtenido el permiso para ello del arrendador según la Ley Núm. 76, *supra*, el vehículo continuó siendo propiedad del arrendatario, Torres. Además, concluyó que la póliza emitida por PRAICO el 3 de septiembre de 1999 cubría los daños sufridos por el vehículo y cualquier otra reclamación que tuviese el demandante por los daños causados por la aseguradora, bien fuese porque según la Ley Núm 76 y la Ley de Vehículos y Tránsito el titular asegurado era Torres o porque Rivera fue aceptado por PRAICO como asegurado adicional.

En cuanto a la reclamación de Fundador Molina Soto, el Tribunal de Primera Instancia resolvió que, habiendo éste fungido únicamente como agente de PRAICO para efectos de la adquisición de la póliza y siendo su labor recopilar la información y someterla a la aseguradora, información que resultó ser veraz, se debía desestimar la demanda en su contra por no haber incurrido en negligencia.

Inconforme con dicha determinación, PRAICO acudió al Tribunal de Apelaciones y alegó, en esencia, que el Tribunal de Primera Instancia había errado: (1) al resolver el caso sumariamente a favor de Rivera; (2) al conceder las sumas reclamadas sin que se desfilara prueba; y (3) al imponerle a PRAICO el pago de honorarios y las costas del litigio.

El foro apelativo, mediante una sentencia emitida el 12 de mayo de 2003, revocó al Tribunal de Primera Instancia. Entendió que PRAICO debía tener la oportunidad de presentar prueba para sostener sus alegaciones, en particular para probar que si PRAICO hubiera conocido que el vehículo era arrendado no hubiera expedido la póliza. Determinó que en este caso existían elementos subjetivos de intención y por lo tanto, la sentencia sumaria no era aconsejable.

Además, revocó los honorarios de abogado concedidos por el foro de instancia debido a que entendió que no se desprendía del expediente del caso que PRAICO hubiera actuado de forma temeraria.

De dicha determinación Rivera acudió ante nos e hizo los siguientes señalamientos de errores:

1. Erró el Tribunal de Circuito de Apelaciones al concluir que la pequeña marquita que se hizo en la solicitud de seguro de auto para asegurar como conductor adicional al Dr. Rafael Rivera Labarca y que indicaba que la propiedad no era arrendada se hizo de forma fraudulenta, o incorrecta, a tal extremo, que el asegurador no hubiera asumido el riesgo de expedir la póliza de haber sabido la verdad, la cual siempre supo.

2. Erró el Tribunal de Circuito de Apelaciones al concluir que la sentencia del Tribunal de Instancia debía revocarse y devolverse el caso para dar oportunidad a PRAICO a presentar prueba tendente a demostrar que las declaraciones realizadas por Rivera Labarca fueron inciertas o fraudulentas, de tal forma, que si PRAICO hubiera conocido que el vehiculo era arrendado, entonces no hubiera expedido la póliza.

3. Erró el Tribunal de Circuito de Apelaciones al resolver, revocando al Tribunal de Primera Instancia, que la conducta de PRAICO no había

sido temeraria cuando lo correcto es lo contrario.

El 29 de agosto de 2003 declaramos no ha lugar la solicitud de *certiorari* presentada por Rivera. De dicha determinación Rivera solicitó reconsideración y el 10 de octubre de 2003, reconsideramos nuestra postura y expedimos el recurso solicitado. El 9 de junio de 2004 aceptamos como su alegato la petición de *certiorari* de Rivera, y el 25 de octubre de 2004, la oposición al recurso de *certiorari* de PRAICO como el suyo.

## II.

El Art. 10 de la Ley Núm. 76 de 13 de agosto de 1994, según enmendada, conocida como la Ley para Regular los Contratos de Arrendamientos de Bienes Muebles dispone:

> El arrendador es el titular del bien objeto del contrato de arrendamiento. El arrendatario, quien tiene su posesión, podrá usar y disfrutar del bien, siempre y cuando no incumpla con las cláusulas estipuladas en el contrato. De no cumplir con las mismas, el arrendador podrá interponer aquellas acciones legales necesarias y pertinentes a fin de compeler al arrendatario a cumplir con la obligación a que voluntariamente se sometió.

> Cuando el bien objeto del contrato de arrendamiento sea un vehículo de motor sujeto a un contrato de arrendamiento, **el titular del bien mueble se considerará aquél a quien, mediante el contrato de arrendamiento, se le cede la posesión, uso y disfrute del bien mueble objeto del contrato.** 10 LPRA sec. 2408 (énfasis suplido)

Por su parte, el Art. 17 de la mencionada ley dispone:

> **El arrendatario no podrá ceder el arrendamiento sin el consentimiento previo, por escrito, del arrendador: <u>Si el arrendatario cede</u>**

**el arrendamiento, sin el debido consentimiento, se considerará como si la cesión no se hubiese efectuado**. 10 LPRA sec. 2415 (énfasis suplido)

Es evidente que conforme a la referida ley, si bien es cierto que el titular del vehículo arrendado es el arrendatario, éste no puede ceder el arrendamiento sin el consentimiento previo y por escrito del arrendador.

Por otro lado, el Art. 11.100 del Código de Seguros dispone:

> Todas las declaraciones y descripciones en una solicitud de póliza de seguro o en negociaciones para la misma, hechas por el asegurado o a su nombre, se entenderá que son representaciones y no garantías. La impostura, las omisiones, el encubrimiento de hechos y las declaraciones incorrectas no impedirán el cobro con arreglo a la póliza, a menos que;
>
> (1) Sean fraudulentos; o
>
> (2) que sean materiales, bien para la aceptación del riesgo, o para el peligro asumido por el asegurador; o
>
> (3) el asegurador de buena fe no hubiera expedido la póliza, no hubiera expedido la póliza por una cantidad tan grande o no hubiera provisto cubierta con respecto al riesgo resultante en la pérdida, de habérsele puesto en conoci- miento de los hechos verdaderos, como se requería en la solicitud para la póliza o de otro de modo.
>
> Cuando el solicitante incurra en cualquiera de los actos enumerados en los incisos (1), (2) y (3) de esta sección **se impedirá el cobro solamente cuando el acto u omisión de que se trate hubiere contribuido a la pérdida objeto de la causa de acción**. 26 LPRA sec. 1110.

Es decir, de conformidad con dicho artículo para que el asegurador pueda invocar representación fraudulenta y,

de ese modo no tener que pagar el importe asegurado, tiene que probar que las omisiones o informaciones incorrectas en una solicitud  lo indujeron a expedir una póliza que no hubiese expedido de haber tenido conocimiento de las verdaderas circunstancias.

Sin embargo, el último párrafo del mencionado artículo aclara que es necesario que el acto u omisión haya contribuido a la pérdida objeto de la causa de acción. En <u>Serrano Ramírez v. Clínica Perea, Inc.</u> 108 DPR 477, 485-486 (1979), resolvimos que el propósito de este párrafo es evitar la interpretación de que una declaración falsa sobre un asunto pertinente a la aceptación del riesgo pueda anular una póliza en aquellos casos en que el hecho incierto u ocultado no esté vinculado en forma alguna al daño sufrido. **<u>La póliza se anula sólo cuando la aseveración falsa o la información omitida no sólo es pertinente a la apreciación del riesgo</u>, <u>sino también a su ocurrencia</u>**.

### III.

A la luz de la normativa antes reseñada, procede examinar ahora si el Tribunal de Apelaciones actuó correctamente al determinar que no procedía la sentencia sumaria a favor de Rivera y resolver que PRAICO no había sido temeraria.

En el caso ante nos no cabe duda de que la transacción efectuada es nula debido a que el estatuto así claramente lo dispone. PRAICO apoya su denegatoria en que la cesión del vehículo por Torres sin su consentimiento interrumpió

la aplicabilidad de la referida póliza. No le asiste la razón.

Como indicamos anteriormente, la Ley Núm. 76 es clara al disponer en su Art. 17 que si el arrendatario cede el arrendamiento sin el debido consentimiento se considerará como si la cesión no se hubiese efectuado. Torres no le solicitó autorización a Popular para venderle el vehículo a Rivera. Por ello, la compraventa realizada el 4 de septiembre de 1999 entre Torres y Rivera no tuvo efecto legal alguno sobre la titularidad del vehículo, y se considera que al momento del accidente el arrendatario seguía siendo Torres y no Rivera. Por consiguiente, la cesión nunca ocurrió y dicha transacción no anuló la póliza que cubría a los asegurados.

A pesar de que la determinación de nulidad de la cesión es suficiente para concluir que la póliza cubre los daños sufridos por el vehículo, entraremos a dilucidar si la declaración de que el auto no era arrendado fue una fraudulenta de manera tal que impediría el cobro de la póliza. Ello debido a que ese fue el argumento utilizado por el Tribunal Apelativo para revocar la determinación del foro de instancia.

Como mencionáramos anteriormente, el Código de Seguros claramente dispone que se impida el cobro solamente cuando la impostura, las omisiones, el encubrimiento de hechos y las declaraciones incorrectas sean fraudulentas, sean materiales para la aceptación del riesgo y cuando el asegurador no hubiera expedido la póliza de haber tenido

conocimiento de los verdaderos hechos. Torres y Rivera omitieron, por alegada inadvertencia, hacer una marca en el encasillado que indicaba que el auto era arrendado. Sin embargo, es menester enfatizar que, a pesar de esta omisión, **PRAICO conocía o debía conocer que el vehículo en cuestión era arrendado**, pues cuando lo aseguró inicialmente había incluido como asegurado adicional a Popular como titular del vehículo, por lo cual la omisión en cuestión no pudo haberla inducido a error.

De otro lado, también debemos considerar que la Ley dispone que aun cuando se incurra en una declaración falsa, el cobro se impedirá **sólo si dicha acción u omisión está vinculada al daño sufrido**. En el caso ante nos, es claro que ni el haber omitido marcar el encasillado de arrendamiento ni el haber efectuado una transacción nula contribuyeron a la pérdida objeto de la causa de acción. Lo que verdaderamente contribuyó a la pérdida del vehículo fue un desperfecto mecánico. Aun si consideráramos que PRAICO desconocía el arrendamiento, dicha falsedad no impediría el cobro de la póliza por no estar vinculada al daño sufrido. Por lo tanto, debemos concluir que, a pesar de la omisión, los daños al vehículo están cubiertos por la póliza.

Por todo lo anterior, forzoso nos resulta concluir que la cesión del vehículo es nula, por lo cual, Popular continúa siendo el dueño del vehículo, Torres el arrendatario y Rivera un conductor adicional asegurado. Por ello, la póliza emitida por PRAICO el 3 de septiembre de 1999 cubre los daños sufridos por el vehículo, y procedía

que el Tribunal de Primera Instancia dictara sentencia sumaria a favor de Rivera, como lo hizo.

Como la mayoría resuelve de otra manera, **e incluso le imputa *motu proprio* Y sumariamente a los doctores Torres Cabret y Rivera Labarca el haber configurado un "esquema" ilícito sin haberle dado la oportunidad de defenderse de tan seria imputación**, yo disiento.

JAIME B. FUSTER BERLINGERI<br>
JUEZ ASOCIADO