ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| INMOBILIARIA BALEARES CXA, INC.<br><br>Demandante Apelante<br><br><br>V.<br><br><br><br>SHEILA LI BERNABE GONZÁLEZ; PEPE & LOLA, LLC.; NORBERTO MEDINA REALTY CORP.; NORBERTO MEDINA ZURINAGA<br><br>Demandados Apelados<br><br><br><br>INMOBILIARIA BALEARES CXA, INC.<br><br>Demandante Apelada<br><br>V.<br><br>SHEILA LI BERNABE GONZÁLEZ; PEPE & LOLA, LLC.; NORBERTO MEDINA REALTY CORP.; NORBERTO MEDINA ZURINAGA<br><br>Demandados- Apelados | KLAN202500026<br><br><br><br><br>CONSOLIDADO<br><br><br><br><br><br><br><br>KLAN202500033 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2021CV05676<br><br>Sala: 803<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente

# **SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2025.

Comparece ante nos Inmobiliaria Baleares CXA, Corp. ("Inmobiliaria" o "Apelante"), y nos solicita que revisemos la Sentencia emitida el 30 de septiembre de 2024[1], por el Tribunal de Primera Instancia, Sala

---

[1] Notificada el 2 de octubre de 2024.

Número Identificador:
SEN2025_____

Superior de San Juan ("foro de instancia" o "foro recurrido"). Mediante la Sentencia, el foro recurrido declaró *Con Lugar* la solicitud de Sentencia Sumaria presentada por los Apelados y, en consecuencia, desestimó la Demanda de epígrafe.

Por los fundamentos que exponemos a continuación, **revocamos** la Sentencia Sumaria apelada.

-I-

La controversia que atendemos hoy gira en torno a la transferencia de una suma de dinero por parte de Inmobiliaria a la Licenciada Sheila Li Benabe González ("Lcda. Benabe"). El Apelante sostiene que la transferencia se hizo en concepto de préstamo, mientras que la Lcda. Benabe alega que fue una donación. Veamos.

El 2 de septiembre de 2021 Inmobiliaria presentó una *Demanda*[2] en cobro de dinero contra la Lcda. Benabe y Pepe y Lola, LLC ("P&L"). Posteriormente, el 14 de junio de 2023, Inmobiliaria solicitó permiso para enmendar la Demanda a fin de incluir como codemandados a Medina Realty y al señor Norberto Medina ("Sr. Medina").[3] En la Demanda Enmendada, Inmobiliaria alega que acordó prestarle la cantidad de $195,000.00 a la Lcda. Benabe para que esta pudiera adquirir un bien inmueble ubicado en el Condominio Playas del Yunque en Luquillo, sin la intervención de un banco hipotecario. Según alega el Apelante, a fin de lograr la compraventa, este transfirió la suma de $195,000.00 a la cuenta del Sr. Medina[4]. El 2 de septiembre de 2021, la Lcda. Benabe y P&L presentaron su *Contestación a Demanda*[5]. En síntesis,

---

[2] Véase Apéndice del recurso apelativo, págs. 1-2.
[3] *Íd.*, a las págs. 8-16.
[4] *Íd.*, a la pág. 189.
[5] *Íd.*, a las págs. 3-7.

alegaron que el Dr. Reyes Colón, representante autorizado de Inmobiliaria le donó a la Lcda. Benabe la cantidad de $195,000.00. Para sustentar su posición presentó un *Contrato de Donación*[6] con fecha del 6 de febrero de 2019. Ahora bien, el Apelante sostiene que "*no firmó* [el contrato] *consciente e informadamente*"[7] y que, de ser esa su firma, "*la misma fue obtenida mediante treta o engaño*".[8] Posteriormente, Inmobiliaria solicitó permiso para enmendar la Demanda a fin de incluir a Medina Realty y al señor Norberto Medina Zuringa ("Sr. Medina") como codemadados, quienes eran la parte vendedora del referido inmueble.[9]

Luego de varios años y múltiples trámites procesales, el 21 de marzo de 2024, la Lcda. Benabe y P&L presentaron una *Solicitud de Sentencia Sumaria*[10]. En esa ocasión, la Lcda. Benabe y P&L señalaron que el Dr. Reyes Colón no tenía "*prueba alguna para probarle al tribunal el elemento esencial indispensable para su demanda de cobro de dinero, la existencia de una deuda líquida, vencida y exigible.*"[11] Oportunamente, el 15 de abril de 2024, Inmobiliaria presentó su *Oposición a Solicitud de Sentencia Sumaria en SUMAC #104* y sostuvo que la transacción en controversia fue un préstamo. Además, alegó que el Contrato de Donación presentado por la Lcda. Benabe adolece de garantías suficientes de validez, por lo que el tribunal debe escuchar los testimonios correspondientes y hacer las determinaciones

---

[6] *Íd.*, a la pág. 193.
[7] *Íd.*, a la pág. 231.
[8] *Íd.*
[9] *Íd.*, a las págs. 8-11.
[10] *Íd.*, a las págs. 144-206.
[11] *Íd.*, a la pág. 161.

de credibilidad que entienda pertinentes, a la luz de la totalidad de las circunstancias.

Así las cosas, el 30 de septiembre de 2024[12], el foro recurrido emitió una *Sentencia*[13] declarando *Ha Lugar* la solicitud de Sentencia Sumaria y, por consiguiente, desestimando la demanda. Inconforme, el 16 de octubre de 2024 Inmobiliaria presentó una *Moción de Reconsideración*[14]. El 12 de diciembre de 2024[15], mediante *Resolución Interlocutoria*[16], el foro recurrido denegó la solicitud de reconsideración. Insatisfecha con el dictamen, el 13 de enero de 2025, Inmobiliaria acudió ante este Tribunal mediante recurso de apelación e hizo los siguientes señalamientos de errores:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, AL RESOLVER LA SENTENCIA SUMARIA A FAVOR DE LA LCDA. BENABE Y P&L CUANDO EXISTE CONTROVERSIA SOBRE HECHOS MATERIALES Y ADJUDICANDO DICHAS CONTROVERSIAS.**
>
> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA CONTRA NORBERTO MEDINA REALTY CORP. Y NORBERTO MEDINA ZURINAGA SIN EXPLICAR LAS RAZONES PARA DICHA DESESTIMACIÓN.**

Cabe señalar que el 12 de febrero de 2025, el Sr. Medina y Medina Realty presentaron un Alegato y sostienen que el foro recurrido actuó correctamente al desestimar la reclamación contra el Sr. Medina por incumplimiento a la Regla 7.2 de Procedimiento Civil[17].

---

[12] Notificada el 2 de octubre de 2024.
[13] *Íd.*, a las págs. 375-380.
[14] *Íd.*, a las págs. 382-394.
[15] Notificada el 13 de diciembre de 2024.
[16] *Íd.*, a la pág. 395.
[17] La regla lee como sigue: "*En todas las aseveraciones de fraude o error, las circunstancias que constituyen el fraude o error deberán exponerse detalladamente. La malicia, la intención, el conocimiento y cualquier otra actitud o estado mental de una persona puede aseverarse en términos generales.*" 32 LPRA Ap. V, R. 7.2.

El 24 de febrero de 2025, la Lcda. Benabe y P&L presentaron su alegato en oposición. En su escrito, alegan que el Apelante no presentó evidencia alguna *"para derrotar el hecho inequívoco de que existe un contrato de donación válido entre las partes…"*[18]

-II-

**A. Sentencia Sumaria**

En nuestro ordenamiento jurídico, el mecanismo de sentencia sumaria tiene como fin aligerar la tramitación de los casos en los cuales no existe una controversia de hechos real y sustancial que requiera la celebración de un juicio en su fondo.[19] Por lo tanto, para adjudicar en los méritos una controversia de forma sumaria es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente.[20]

En *Meléndez González et al. v. M. Cuebas*[21] el Tribunal Supremo de Puerto Rico estableció el estándar específico que debe utilizar el Tribunal de Apelaciones al revisar una sentencia sumaria.

En primer lugar, por encontrarse en la misma posición que el Tribunal de Primera Instancia, este Tribunal debe regirse por la regla 36 de Procedimiento Civil al momento de revisar este tipo de solicitudes. Es

---

[18] Véase alegato en oposición, pág. 16.
[19] *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).
[20] *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019); *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224-225 (2015).
[21] 193 DPR 100 (2015).

decir, aplicarán los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Evidentemente, el foro apelativo estará limitado, en la medida en que no puede considerar evidencia que las partes no presentaron ante el foro de instancia, toda vez que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a la parte que se opuso a la solicitud de sentencia sumaria en el foro primario.

Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que, tanto la Solicitud de Sentencia Sumaria, como la Oposición, cumplan con los requisitos de forma definidos en la Regla 36 de Procedimiento Civil y discutidos en *SLG Zapata-Rivera v. JF Montalvo*[22].

Un tercer factor que se debe considerar es si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil. A tales efectos, deberá exponer los hechos materiales en controversia y aquellos que están incontrovertidos. Dicha determinación podrá hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

Finalmente, de encontrar que los hechos materiales están realmente incontrovertidos, el foro apelativo procederá a revisar de *novo* si el Tribunal de Primera

---

[22] 189 DPR 414 (2013).

Instancia aplicó correctamente el Derecho a la controversia.[23]

### B. Derecho de Contratos

Nuestro ordenamiento jurídico permite la libertad de contratación, siempre que las cláusulas y condiciones no sean contrarias a la ley, la moral o al orden público.[24] Si las partes cumplen con ello, el contrato tendrá fuerza de ley, por lo que ambas partes se obligan al cumplimiento de lo allí pactado y sus consecuencias.[25] Cabe señalar que "*cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan.*"[26] A su vez, los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o a prestar algún servicio.[27] También, la existencia de un contrato se constata cuando concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; y (3) causa de la obligación que se establezca.[28] Una vez concurren las condiciones esenciales para su validez, un contrato es obligatorio "*cualquiera que sea la forma en que se haya celebrado*"[29] Del mismo modo, nuestro ordenamiento jurídico reconoce que para que una deuda sea considerada paga, el

---

[23] *Meléndez González, et al. v. M. Cuebas*, Inc., et al. 193 DPR 100, 118-119 (2015). (citas omitidas).
[24] Art. 1207 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3372. El Código Civil de 1930 es el que se encontraba vigente al momento de los hechos.
[25] Arts. 1044 y 1210 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2994 y 3375, respectivamente.
[26] *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 450 (2007).
[27] Art. 1206 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3371; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008); *Collazo Vázquez v. Huertas Infante*, 171 DPR 84, 102 (2007).
[28] Art. 1213 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3391; *García Reyes v. Cruz Auto Corp.*, supra, a la págs. 885-886; *Rivera v. PRAICO*, 167 DPR 227, 232 (2006).
[29] Art. 1230 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3451.

prestatario tiene que entregar la cosa o hecho que establecía la obligación.[30]

Referente al contrato de préstamo, el Código Civil de Puerto Rico de 1930 dispone lo siguiente:

> Por el contrato de préstamo, una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición de volver otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo. El comodato es esencialmente gratuito. El simple préstamo puede ser gratuito o con pacto de pagar interés.[31]

Por su parte, el Art. 1644 del mismo Código dispone que "*el que recibe en préstamo dinero u otra cosa fungible, adquiere su propiedad, y está obligado a devolver al acreedor otro tanto de la misma especie y calidad.*"[32]

### C. Donación

La donación es un acto de liberalidad por el cual una persona dispone gratuitamente de una cosa en favor de otra que la acepta.[33] En general, se clasifican en donaciones entre vivos (*inter vivos*) o por causa de muerte (*mortis causa*), según el momento en que surten efecto jurídico.[34]

Las donaciones *inter vivos* son aquellas cuyos efectos ocurren en vida del donante.[35] Todas las

---

[30] Art. 1111 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3161.
[31] Art. 1631 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 4511.
[32] 31 LPRA sec. 4571.
[33] Art. 558 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1981.
[34] Art. 559 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1982.
[35] R.E. Ortega Vélez, *Sobre: Donaciones, Herencias y Testamentos*, San Juan, Ediciones SITUM, 2021, pág. 10.

donaciones se perfeccionan desde que el donante conoce la aceptación del donatario.[36]

La donación entre vivos puede ser de tres clases, la puramente graciosa o la que se hace sin condición y por mera liberalidad; la onerosa, o aquella en que se impone al donatario un gravamen sobre el valor de lo donado y la remuneratoria o la que se hace a una persona por sus méritos o por los servicios prestados al donante siempre que no constituyan deudas exigibles.[37] Cabe señalar que, las donaciones que hayan de producir sus efectos entre vivos, se regirán por las disposiciones generales de los contratos y obligaciones en todo lo que no se halle determinado en el Código Civil.[38] Por tanto, la donación debe cumplir con todos los elementos del contrato, esto es, objeto, consentimiento (oferta y aceptación) y causa.[39] Para hacer una donación es necesario que el donante sea alguien con capacidad para contratar y para disponer de sus bienes.[40] Por otro lado, cualquiera puede aceptar una donación, excepto aquellos que estén incapacitados por ley para ello.[41]

-III-

La parte apelante alega que el foro de instancia se equivocó al dictar sentencia sumariamente por entender que existen hechos esenciales que se encuentran en controversia. En su segundo señalamiento de error, Inmobiliaria sostiene que erró el foro recurrido al desestimar la demanda contra el Sr. Medina y Medina

---

[36] Art. 565, del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1988.
[37] Art. 560 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1983.
[38] Art. 563 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1986.
[39] Ortega Vélez, op. cit., pág. 7.
[40] Art. 566 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2001.
[41] Art. 567 del Código Civil de Puerto Rico de 1930, 31 LPRA 2002.

Realty sin exponer las razones para ello. A la luz de los principios discutidos, corresponde que analicemos si la prueba que tuvo ante sí el foro de instancia era suficiente para determinar sumariamente que la transacción de $195,000.00 se trató de una de donación y no de un préstamo. Por estar íntimamente relacionados, procedemos a discutir los señalamientos de errores de manera conjunta.

A fin de poder hacer una revisión de *novo*, a continuación, exponemos los hechos esenciales que se encuentran en controversia, así como los incontrovertidos. Las determinaciones de hechos incontrovertidos, conforme a la documentación del recurso, son las siguientes:

1. El Dr. Reyes Colón y la Lcda. Benabe contrajeron matrimonio el 10 de julio de 2011 en San Juan, Puerto Rico.[42]

2. El 18 de marzo de 2021 se decretó el divorcio del Dr. Reyes Colón y la Lcda. Benabe.[43]

3. La corporación Pepe & Lola, LLC es una entidad jurídica con fines de lucro que fue registrada en el Departamento de Estado del Estado Libre Asociado de Puerto Rico bajo el número 41390 el 28 de septiembre de 2018.[44]

4. La corporación Inmobiliaria Baleares CXA, Corp. es una entidad jurídica con fines de lucro registrada en el Departamento de Estado del Estado Libre Asociado de Puerto Rico bajo el número 140507 el 22 de diciembre de 2003.[45]

---

[42] Véase Apéndice del recurso apelativo, págs. 163-164.
[43] *Íd.*
[44] *Íd.*, a la pág. 165.
[45] *Íd.*, a las págs. 166-167.

5. La Lcda. Benabe es la persona autorizada por la entidad corporativa para tomar decisiones en representación de Pepe & Lola, LLC.[46]

6. El Dr. Reyes Colón es la persona autorizada por la entidad corporativa para tomar decisiones en representación de Inmobiliaria Baleares CXA, Corp.[47]

7. El 2 de septiembre de 2018 la Lcda. Benabe entregó la cantidad de $5,000.00 de su pecunio personal en concepto del contrato de opción otorgado.[48]

8. El 2 de octubre de 2018 se celebró la compraventa del bien inmueble ubicado en el condominio Playas del Yunque I en Luquillo entre Norberto Medina Realty Corp. y Pepe & Lola, LLC por la cantidad de doscientos quince mil dólares ($215,000.00) mediante la escritura pública número 8 ante el notario el Lcdo. Héctor R. Arroyo Aguilar.[49]

9. Previo a la compraventa, el 28 de septiembre de 2018, Inmobiliaria Baleares CXA, Corp., transfirió la suma de ciento noventa y cinco mil dólares ($195,000.00) de su cuenta bancaria a la cuenta bancaria del vendedor del inmueble en cuestión.[50]

10. El 1 de octubre de 2018 la Lcda. Benabe pagó a Norberto Medina Realty la cantidad de $16,227; quince mil dólares ($15,000.00) en concepto del balance adeudado por la compraventa, $341 en concepto de crédito por el pago del CRIM y

---

[46] Íd., a la pág. 168.
[47] Íd., a las págs. 170-171.
[48] Íd., a la pág. 205.
[49] Íd., a las págs. 175-187.
[50] Íd., a la pág. 189.

$886.00 en concepto de crédito por los pagos de mantenimiento. Dicho pago se realizó mediante el cheque de gerente emitido por First Bank.[51]

Por otro lado, según surge de los autos del caso los siguientes hechos esenciales se encuentran en controversia:

1. Si la transferencia de $195,000.00 por parte del Dr. Reyes Colón a la Lcda. Benabe constituyó un préstamo o una donación.
2. Si el Contrato de Donación es válido.

Según indicamos en el acápite II de este escrito, nuestro ordenamiento jurídico permite que un tribunal dicte sentencia sumaria en aquellos casos en los que no existe controversia sobre los hechos esenciales. La controversia que tenemos ante nos, gira en torno a una transacción que realizó la parte Apelante a la Lcda. Benabe. Por un lado, Inmobiliaria sostiene que la transacción se hizo en calidad de préstamo, mientras que la Lcda. Benabe alega que fue una donación.

Luego de un análisis de los documentos que obran en los autos del caso, resulta forzoso concluir que existe controversia sobre los hechos medulares que trajeron a las partes a este Tribunal. Veamos.

El 21 de septiembre de 2018, el Dr. Reyes Colón firmó un documento titulado "*Resolution to Loan Funds*"[52]. Mediante dicho documento, el Dr. Reyes Colón, persona autorizada por Inmobiliaria para tomar decisiones a nombre de la corporación, otorgó un préstamo a la Lcda. Benabe por la cantidad de $195,000.00. Dicha

---

[51] *Íd.*, a la pág. 191.
[52] Véase Apéndice del recurso apelativo, pág. 266.

transferencia tenía el propósito de comprar el apartamento ubicado en el Condominio Playas del Yunque I en Luquillo. El documento señala que el préstamo sería a un 0% de interés y que tendría que ser pagado en un término de doce (12) meses. Ahora bien, de los autos del caso surge un Contrato de Donación entre "Inmobiliaria Baleares, Inc." y "Pepe & Lola, LLC" con fecha del 6 de febrero de 2019, es decir, posterior a la transacción. Sin embargo, como parte de los planteamientos del Dr. Reyes Colón, este señala que la corporación que aparece como parte en el contrato es una entidad que no conoce y con la que no tiene relación alguna. Según la prueba presentada, el Dr. Reyes Colón es accionista de Inmobiliaria Baleares CXA, Corp. y no de Inmobiliaria Baleares, Inc. Por tal razón, sostiene que no firmó el contrato en cuestión. Tal y como indicamos, para que un contrato sea válido este debe tener objeto, consentimiento y causa. Al analizar el Contrato de Donación surgen serias dudas respecto al consentimiento del contrato. Por tal razón, el foro de instancia estaba impedido de dictar sentencia sumaria. En su lugar, deberá celebrar un juicio en su fondo donde las partes tengan la oportunidad de presentar prueba.

En conclusión, ante la controversia sobre la validez del Contrato de Donación, no procedía dictar sentencia sumaria a favor de la Lcda. Benabe. Por tal razón, revocamos la sentencia sumaria dictada y devolvemos el caso al foro de instancia para que permita el descubrimiento de prueba correspondiente.

-IV-

Por los fundamentos que anteceden, ***revocamos*** la Sentencia recurrida y devolvemos el caso al foro de

instancia para que actúe de conformidad con lo antes expresado.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones