ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| ISLAND PORTFOLIO SERVICES, LLC, como agente de FAIRWAY ACQUISITIONS FUND, LLC <br><br> Apelado <br><br> v. <br><br> KARINA K. RAMOS RIVERA <br><br> Apelante | KLAN202500291 | *Apelación Civil* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas <br><br> Caso Núm.: CG2024CV00492 <br><br> Sala: 803 <br><br> Sobre: Cobro de dinero |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de junio de 2025.

Compareció la señora Karina K. Ramos Rivera (en adelante, "señora Ramos Rivera" o "apelante") mediante un recurso de apelación presentado el 7 de abril de 2025. Nos solicitó la revocación de la *Sentencia Sumaria* emitida el 10 de febrero de 2025 —notificada el 13 de febrero de 2025— por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "foro primario"). En ese dictamen, el foro primario declaró ha lugar una solicitud de sentencia sumaria; esto tuvo el efecto de condenar a la señora Rivera Ramos al pago de una deuda de $13,753.35, $200.00 costas y gastos, y $1,375.00 en honorarios de abogado; la cuantía total devengaría intereses legales a razón de 8.75% desde la radicación de la *Demanda* hasta su íntegra satisfacción.

Por los fundamentos que expondremos a continuación, se **confirma** la sentencia apelada.

---

[1] Mediante la Orden Administrativa DJ 2024-062C emitida el 6 de mayo de 2025, se enmendó la constitución de los paneles del Tribunal de Apelaciones.

**-I-**

El 13 de febrero de 2024, Island Portfolio Services, LLC (en adelante, "Island Portfolio" o "apelada") instó una *Demanda* en cobro de dinero contra la señora Ramos Rivera.[2] En esta, alegó que Fairway Acquisitons Fund, LLC (en adelante, "Fairway") adquirió mediante cesión todos los derechos sobre la cuenta 82200116957940001, de la cual era titular la señora Ramos Rivera.[3] Además, adujo Island Portfolio que fue contratada por Fairway para que fungiera como agencia de cobro.[4] Entonces, instó una causa de acción para cobrar la cuantía debida al cesionario tras el incumplimiento de la señora Ramos Rivera. Alegaron que esta deuda yació de un *Contrato de Venta al Por Menor a Plazos Vehículos* celebrado el 13 de enero de 2014 entre la apelante y Popular Auto, LLC (en adelante, "Popular Auto"), el acreedor original.[5] Island Portfolio precisó que, conforme al pacto, se aceleró el término del balance total adeudado y que la deuda vencida de $13,753.35 era líquida y exigible.[6]

En consecuencia, 28 de octubre de 2024, la señora Ramos Rivera presentó su *Contestación a Demanda.*[7] Alegó que no existía la deuda y que le había requerido a la apelada evidencia de la deuda y esta no fue provista.[8] Levantó las siguientes defensas afirmativas: (1) la *Demanda* no aducía hechos que justificaran la concesión de un remedio, según fue redactada; (2) las partidas reclamadas eran especulativas e irreales, y (3) prescripción de la causa de acción.[9] Ese mismo día, el foro primario notificó una *Orden* donde le concedió

---

[2] Apéndice de la apelante, anejo I, págs. 1-19.
[3] *Íd.*
[4] *Íd.*
[5] *Íd.*, págs. 7-8.
[6] *Íd.*, pág. 2.
[7] *Íd.*, anejo II, págs. 20-25.
[8] *Íd.*
[9] *Íd.*

a las partes 90 días para reunirse y producir el Informe para el Manejo del Caso.[10]

Posteriormente, el 8 de enero de 2025, Island Portfolio instó una *Solicitud de Sentencia Sumaria*.[11] Particularmente, solicitó que el foro recurrido dictara sentencia sumariamente por la cuantía solicitada más intereses legales debido a que no había controversias de hechos materiales y solo restaba aplicar el derecho a los hechos.[12] Sostuvo que la señora Paloma Ramos Rivera suscribió un *Acuerdo de Entrega Voluntaria por Tercero de Unidad Sujeta a Gravamen Mobiliario* el 7 de marzo de 2016, por el cual se le entregó el vehículo financiado al acreedor original. Además, adujo que Popular Auto le notificó a la apelante sobre su intención de disponer de la unidad el 9 de marzo de 2016; eventualmente, este fue vendido el 26 de mayo de 2016 por $13,200.00, por lo cual persistía un balance pendiente de $13,753.35. Asimismo, planteó que, luego de que el acreedor original le vendiera la cuenta a Fairway y estos contrataran a Island Portfolio como agencia de cobro, procedieron a cursarle una comunicación extrajudicial por correo certificado a la señora Ramos Rivera sobre su intención de recuperar lo debido; esta carta fue firmada y la apelante no hizo reclamo alguno sobre ella. Alegaron entonces que la deuda es una líquida y exigible.

Algunos de los documentos más relevantes que se acompañaron en la solicitud de sentencia sumaria instada fueron los siguientes: (1) el *Acuerdo de Entrega Voluntaria por Tercero de Unidad Sujeta a Gravamen Mobiliario* fechado al 7 de marzo de 2016; (2) las notificaciones sobre la disposición de la propiedad; (3) el *Bill of Sale and Assignment of Accounts* evidenciando la compra de Fairway de la cuenta de Popular Auto; (4) el *Estado de Cuenta* de la

---

[10] *Íd.*, anejo III, pág. 26.
[11] *Íd.*, anejo IV, págs. 27-50.
[12] *Íd.*, pág. 34.

señora Ramos Rivera, y (5) el *Aviso de Cobro* por parte de Island Portfolio fechado al 31 de agosto de 2023 junto con su certificación firmada.

Por su parte, el 6 de febrero de 2025, la señora Ramos Rivera presentó su *Oposición a Solicitud de Sentencia Sumaria*, mediante la cual arguyó que la reclamación no era válida, líquida y exigible, y que no se podía determinar cuál era la obligación en cuestión porque estaba extinta; según ella, esta extinción se produjo con la entrega voluntaria del vehículo.[13] Además, sustentó que Island Portfolio incumplió con la Ley de Transacciones Comerciales, *infra*, porque no incluyó prueba del cobro, ejecución, disposición o aceptación de la deficiencia en la solicitud de sentencia sumaria.

Considerado todo lo anterior, el foro primario emitió la *Sentencia Sumaria* recurrida el 10 de febrero de 2025 y esta fue notificada el 13 de febrero de 2025.[14] En esta, declaró ha lugar la solicitud de sentencia sumaria presentada por Island Portfolio. Dicho de otra manera, la *Sentencia Sumaria* tuvo el efecto de condenar a la señora Ramos Rivera al pago íntegro de la deuda reclamada más costas y honorarios de abogado. El foro primario estableció las siguientes determinaciones de hecho:

1) La demandada, Karina K. Ramos Rivera, suscribió con Popular Auto [el] documento de *Contrato de Venta al Por Menor a Plazos de Vehículos* Núm. 2169579401 con fecha del 13 de enero de 2014 para el financiamiento de un vehículo BMW del 2010, modelo X3 (en adelante, la unidad).
2) Conforme el antedicho contrato, la demandada financió con Popular Auto la cantidad de $30,954.00 con cargo de financiamiento por $14,631.52, para una deuda total de $45,685.52 (en adelante, la cuenta).
3) En su parte pertinente dispone [el] *Contrato de Venta al Por Menor a Plazos* habido entre Popular Auto y la demandada Karina K. Ramos Rivera en sus CL[Á]USULAS Y CONDICIONES, sección titulada EN CASO DE INCUMPLIMIENTO, inciso J:
"En caso de que ocurra o contin[ú]e ocurriendo cualquier causa de incumplimiento de las descritas anteriormente, las sumas de principal y sus intereses y todas las demás obligaciones del comprador bajo este Contrato quedarán líquidas y exigibles, automáticamente, sin que se requiera

---

[13] *Íd.*, anejo VI, págs. 57-116.
[14] *Íd.*, anejo VII, págs. 117-122.

acción por parte del Vendedor o cesionario, sin notificación al Comprador o a ninguna otra persona natural o jurídica, sin protesto, presentación, demanda o aviso, todos los cuales se renuncian expresamente en el caso de que ocurra o contin[ú]e ocurriendo cualquier otra causa de incumplimiento de las descritas anteriormente, el Vendedor o su cesionario tendrá todos los derechos y remedios a su favor contemplados bajo la Ley de Transacciones Comerciales (Ley Núm. 208 del 17 de agosto de 1995, según enmendada), y cualquier otra ley aplicable, incluyendo, pero no limitado [al] derecho a la posesión y disposición del equipo sin incoar un proceso judicial. Una vez reposea el equipo, el Vendedor o su cesionario podrá vender o disponer del equipo a través de cualquier procedimiento a tenor con la Ley de Transacciones Comerciales. El producto de dicha venta menos las cantidades permutadas, incluyendo el reembolso de los gastos incurridos por el Vendedor o su cesionario por motivas de la reposesión y venta del vehículo, será aplicado al pago de las obligaciones del Comprador bajo este Contrato. El sobrante, si alguno, será pagado al comprador, a menos que por ley se disponga otra cosa. Los derechos y remedios del Vendedor y su cesionario bajo este Contrato son adicionales a cualesquiera otros remedios o derechos concedidos por la ley y podrán hacerse efectivos sucesiva o concurrentemente. **El Comprador será responsable al Vendedor o su cesionario de cualquier deficiencia que pueda surgir en relación con sus obligaciones bajo este Contrato una vez el vendedor haya dispuesto del equipo y deducido los gastos razonables incurridos por el cobro de la obligación garantizada**."

4) El 7 de marzo de 2016 **un tercero** de nombre Paloma Ramos, hizo entrega de la unidad a Popular Auto suscribiendo el documento de *Acuerdo de Entrega Voluntaria por Tercero de Unidad Sujeta a Gravamen Mobiliario*. Dicho documento **no contiene relevo de obligación monetaria alguna** de la demandada para con Popular Auto.

5) El 9 de marzo de 2016, Popular Auto le notificó a la demandada su intención de disponer de la unidad por venta y que le sería reclamada cualquier diferencia que resultara entre el precio de venta y el monto adeudado en la cuenta, o se le pagaría el exceso recobrado, de resultar un exceso sobre la deuda en la venta de la unidad. Se le confirió hasta el 28 de marzo de 2016 para saldar la cuenta.

6) El 26 de mayo de 2016 Popular Auto procedió a vender la unidad por $13,200.00, resultando un balance pendiente de cobro de $13,753.35, la cual se le reclamó a la demandada mediante carta de Popular Auto del 3 de junio de 2016.

7) El 21 de enero de 2021, Popular Auto cede la cuenta en marras a Fairway Acquisitions Fund, LLC.

8) Fairway Acquisitions Fund, LLC contrata a Island Portfolio Services, LLC como agencia de cobro, (en adelante, los demandantes).

9) Island Portfolio Services, LLC es una Agencia de Cobros debidamente autorizada a dedicarse al negocio de Agencias de Cobro en Puerto Rico.

10) El 31 de agosto de 2023, Island Portfolio Services, LLC le reclama a la demandada Karina K. Ramos Rivera mediante correo certificado con acuse de recibo número 9414 8118 9876 5416 68768 86. Consta como Anejo XI de la Solicitud de Sentencia Sumaria de los demandantes

(SUMAC 31) dicha comunicación y [su] acuse de recibo [están] firmado[s].

11) Conforme [la] **Declaración Jurada** prestada por Kelvin Manuel Rosa Vélez, representante de la demandante, **la demandada les adeuda la cantidad de $13,753.35**, la cual se encuentra líquida y exigible.[15]

Inconforme, el 28 de febrero de 2025, la señora Ramos Rivera presentó una *Moción en Solicitud de Reconsideración y de Determinaciones de Hechos Adicionales*, recalcando que no hay deuda que exigir y que las actuaciones de Island Portfolio son contrarias a la Ley de Transacciones Comerciales, *infra*.[16] El foro primario declaró y notificó el 6 de marzo de 2025 su determinación de no ha lugar al petitorio de la señora Ramos Rivera.[17]

Insatisfecha, el 7 de abril de 2025, la señora Ramos Rivera acudió a este Tribunal mediante el recurso de epígrafe y apuntaló el siguiente error:

Erró el foro de instancia al dictar sentencia sumar[i]a a favor de la parte Demandante a pesar de la deuda quedar extinguida mediante acuerdo de entrega voluntaria o en su defecto existir controversia de hechos y en cuento al alcance de la entrega voluntaria. Véase Apéndice a las pág. 37.

Por su parte, el apelado presentó su *Alegato en Oposición a la Apelación* el 6 de mayo de 2025.

Con el beneficio de la comparecencia escrita de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Sentencia Sumaria**

La Regla 36 de las de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 36 instituye el mecanismo de sentencia sumaria a nuestro ordenamiento jurídico. En particular, su función es permitir que cualquiera de las partes pueda mostrar, previo al juicio, que no existe una controversia material de hecho que deba ser dirimida en

---

[15] *Íd.*, págs. 118-119.

[16] *Íd.*, anejo VIII, págs. 123-130.

[17] *Íd.*, anejo IX, págs. 131-132.

un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. *Íd.*, R. 36.1-36.2; *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 784-785 (2016).

En ese sentido, la parte promovente de la solicitud debe demostrar la inexistencia de una controversia de hecho material por medio de una moción fundamentada, mientras que la parte promovida debe demostrar que existe controversia de algún hecho material sobre la totalidad o parte de la causa de acción. *Rodríguez Méndez v. Laser Eye,* supra, pág. 785. Además, la parte promovida no puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar evidencia que demuestre la existencia de controversia sustancial de hechos. *Íd.* Sin embargo, ninguna de las partes puede enmendar sus alegaciones a través de la presentación de una sentencia sumaria o su oposición. *León Torres v. Rivera Lebrón*, 204 DPR 20, 47 (2020).

Así pues, para que el tribunal pueda adjudicar en los méritos una controversia de forma sumaria, es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia ofrecida, surja que no hay controversia real o sustancial en cuanto a algún hecho esencial y pertinente, y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente. 32 LPRA Ap. V, R. 36.3(e).

Los hechos esenciales y pertinentes, también conocidos como hechos materiales, son aquellos que pueden afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023). Por lo tanto, el tribunal solo podrá dictar sentencia sumaria en los casos en los cuales tenga ante su consideración todos los hechos

materiales para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. *Íd.*

Conviene destacar que el Tribunal Supremo ha dispuesto que el foro apelativo se encuentra en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia de una solicitud de sentencia sumaria. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 115 (2015). Además, el Alto Foro estableció el estándar específico de revisión que debe utilizar el Tribunal de Apelaciones, a saber: (1) examinar de *novo* el expediente de la manera más favorable a favor de la parte promovida y aplicar las disposiciones de la Regla 36 de las de Procedimiento Civil, *supra* como su jurisprudencia interpretativa; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma instituidos en la Regla 36.4 de las de Procedimiento Civil, *supra;* (3) verificar si en realidad existen hechos materiales en controversia y, de haberlos, exponer concretamente los hechos materiales controvertidos e incontrovertidos, y (4) de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el foro primario aplicó correctamente el derecho a la controversia. *Meléndez González et al. v. M. Cuebas,* supra, págs. 117-119. Además, el foro apelativo está limitado en su revisión a lo siguiente:

> *[P]rimero*, s[o]lo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit*[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. *Íd.*, pág. 114-115.

**B. Teoría general de contratos**

El contrato nace a la vida jurídica cuando una o varias personas prestan su consentimiento para obligarse a hacer, dar o

prestar algo. Artículo 1206 del Código Civil de 1930, 31 LPRA sec. 3371; *Unisys Puerto Rico, Inc. v. Ramallo Brothers,* 128 DPR 842, 852 (1991); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008); *Collazo Vázquez v. Huertas Infante*, 171 D.P.R. 84, 102 (2007).[18] Los requisitos para la perfección de un contrato son: (1) consentimiento de los contratantes; (2) objeto cierto, y (3) causa lícita. 31 LPRA sec. 3391; *García Reyes v. Cruz Auto Corp.*, supra, 885; *Rivera v. PRAICO*, 167 DPR 227, 232 (2006). Cuando coexisten estos elementos, un contrato es mandatorio en la manera que se haya celebrado. 31 LPRA sec. 3451.

En nuestro ordenamiento jurídico, impera el principio de libertad de contratación que le permite a las partes pactar las cláusulas y condiciones que entiendan, siempre que estas no sean contrarias a la ley, moral u orden público. *Íd.*, sec. 3372; *Guadalupe Solís v. González Durieux*, 172 DPR 676, 683 (2007); *Álvarez v. Rivera*, 165 DPR 1, 17 (2005); *Torres, Torres v. Torres Serrano*, 179 DPR 481, 493 (2010); *Oriental Finances Services v. Nieves*, 172 DPR 462, 470-471 (2007). Entonces, los contratos "se perfeccionan por el mero consentimiento, y desde entonces obligan, no s[o]lo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". 31 LPRA sec. 3375; *Collazo Vázquez v. Huertas Infante*, supra, pág. 103; *López v. González*, 163 DPR 275, 282 (2004).

A tales efectos, existe un principio conocido como *pacta sunt servanda* o la autonomía de la voluntad que supone la obligatoriedad de lo acordado según sus términos y condiciones. 31 LPRA sec. 2994; *Utility Consulting Services v. San Juan*, 115 DPR 88, 90 (1984); *Banco*

---

[18] Nótese que, para esta controversia, es aplicable el Código Civil de 1930 derogado. Debido a esto, procedemos a citar los artículos pertinentes en derecho.

*Popular v. Sucn. Talavera*, 174 DPR 686, 693 (2008). Dicho de otro modo, "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de [estos]". *VDE Corp. v. F & R Contractors*, 180 DPR 21, 34 (2010); *López v. González*, 163 DPR 275, 281 (2004).

Como regla general:

Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aqu[e]llas. 31 LPRA sec. 3471.

Es decir, la voluntad de las partes tiene más peso que el escrito del contrato cuando este último no es lo suficientemente claro o si no refleja apropiadamente las intenciones de los contratantes.

## C. Deuda líquida y exigible

Una deuda se entiende satisfecha cuando se hubiese entregado la cosa o derecho que compone la prestación en su totalidad. 31 LPRA sec. 3161.

En el contexto de una acción de cobro de dinero, el demandante debe evidenciar que "existe una deuda válida, que la misma no se ha pagado, que él es el acreedor y los demandados sus deudores". *General Electric v. Concessionaraires, Inc.*, 118 DPR 32, 43 (1986). Asimismo, debe probar que la deuda es una líquida, vencida y exigible. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 900 (1993).

Así pues, si la cuantía debida es *cierta* y *determinada*, la deuda es *líquida* y se puede exigir en derecho antes de su vencimiento; en otras palabras, una cantidad es líquida cuando se precisa cuánto se debe. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108-

109 (2021), citando a *Ramos y otros v. Colón y otros,* supra, pág. 546. Entonces, la deuda es exigible cuando la obligación no es nula y puede exigirse su cumplimiento; es decir, cuando está vencida. *RMCA v. Mayol Bianchi,* supra, págs. 108-109; *Ramos y otros v. Colón y otros,* supra, pág. 546.

**D. Ley 68 de 19 de junio de 1964**

La *Ley de Ventas a Plazos y Compañías de Financiamiento* tiene como propósito principal reglamentar estos tipos de negocios jurídicos, especialmente cuando media la intervención de un cesionario. *Berríos v. Tito Zambrana Auto, Inc.,* 123 DPR 317, 331 (1989). Pertinentemente, esta ley define un contrato de venta al por menor a plazos como:

> [C]ualquier acuerdo convenido en Puerto Rico para pagar el precio de venta al por menor a plazos de mercancía o servicios en el transcurso de un período determinado de tiempo. Además, incluye los certificados de mercancía y certificados de crédito, así como cualquier acuerdo convenido en Puerto Rico en virtud del cual el comprador prometa pagar a plazos el precio de venta diferido de mercancía o servicios, o cualquier parte del mismo o cualquier otro acuerdo convenido en Puerto Rico en virtud del cual el comprador prometa pagar a plazos el balance descubierto de su deuda con un vendedor al por menor y bajo los cuales los cargos a plazos se debitan al balance descubierto por la deuda. El término incluye exclusivamente acuerdos convenidos para pagar el precio de venta al por menor a plazos de mercancía o servicios donde el comprador sea un individuo y medie cargo por financiamiento. 10 LPRA sec. 731 (6).

Se acentúa que estos contratos deben constar por escrito, contener el acuerdo completo y llevar las firmas del comprador y vendedor. *Íd.*, sec. 741. También, su título debe hacer alusión a que es un contrato de venta al por menor a plazos. Además, el acuerdo debe incluir un aviso sobre el derecho de pagar por adelantado, lo cual cancelará el principal. *Íd.*

La ley hace hincapié en que el contrato contendrá los nombres del vendedor y el comprador, la sede de negocios del vendedor, la residencia o lugar donde hace negocios el comprador, lugar de

otorgamiento y una descripción apta de los servicios o de la mercancía. *Íd.* Igualmente, advierte que el convenio detallará:

> (a) 1. El precio de venta de la mercancía o los servicios objeto de la venta al por menor a plazos; 2. El precio de venta de cualesquiera accesorios o servicios que no estén incluidos en el párrafo (i) de esta cláusula, separadamente relacionados;
> (b) El monto del pronto pago del comprador, desglosando las cantidades pagadas en efectivo y en bienes e incluyendo una descripción breve de los bienes, si algunos, tomados en cuenta.
> (c) La diferencia entre la cláusula (a) y la cláusula (b) de este inciso.
> (d) La cantidad, si alguna, incluida para seguros, indicando el tipo de seguro y el costo de cada cubierta a opción del comprador.
> (e) La cantidad, si alguna, para derechos.
> (f) El principal inicial, que será la suma de las cláusulas (c), (d) y (e) de este inciso.
> (g) La cantidad del cargo por financiamiento y la "Tasa de por ciento anual".
> (h) El balance diferido, que será la suma de las cláusulas (f) y (g) de este inciso que deba pagar el comprador, el número de plazos requeridos, el monto de cada plazo expresado en dólares y la fecha de vencimiento o término de cada uno de dichos plazos. No será necesario indicar los renglones en el orden y secuencia indicados anteriormente; podrá incluirse renglones adicionales para explicar los cómputos realizados para determinar el balance diferido a ser pagado por el comprador.
> (i) Los cargos y penalidades impuestos por pagos en mora y la forma de computarlos. Toda cantidad expresada en cifras y por cientos deberá ser en tipo no menor de diez (10) puntos, mecanografiada a máquina de tipo no menor que el "elite", o manuscrito en forma clara y legible. Esta información deberá ser incluida en el contrato antes de extenderse el crédito. *Íd.*

Asimismo, debe contener un aviso al cesionario que le advierta sobre que estará sujeto a cualquier reclamación o defensa que el comprador interponga en las mismas condiciones que el acreedor original. De igual manera, el acuerdo debe plasmar las advertencias necesarias y hallarse en cumplimiento de las disposiciones federales aplicables. *Íd.*

Ahora bien, la Ley Núm. 68, *supra,* esboza un listado de disposiciones prohibidas en su Artículo 209. *Íd.,* sec. 749. Entre las prohibiciones más notorias, se destaca el hecho de que no se puede pactar que el comprador no pueda instar reclamaciones o defensas contra el cesionario. *Íd.,* inciso (a). A su vez, este articulado veda que el tenedor acelere el vencimiento del balance adeudado arbitrariamente o sin causa razonable. *Íd.,* inciso (b). En relación

con esto, la ley pormenoriza que el vencimiento del contrato podrá

acelerarse:

> (1) Cuando el comprador falte en el pago de tres plazos consecutivos.
> (2) Cuando el comprador falte en el pago de uno o más plazos vencidos, si en dos o más ocasiones anteriores había dejado pagar dos o más plazos consecutivos y en dichas ocasiones se había rehabilitado totalmente en el pago de los plazos vencidos.
> (3) Cuando el comprador que ha dejado de pagar uno o más plazos consecutivos le presenta un pago parcial de la suma vencida y, después de efectuar ese pago parcial, continúa pagando los plazos futuros a su vencimiento, pero sigue en mora con respecto al remanente de la suma vencida durante tres plazos consecutivos posteriormente a la fecha en que efectuó el pago parcial.
> (4) Cuando se trate del negocio de financiamiento de primas de pólizas de seguro, el Comisionado de Instituciones Financieras dispondrá cuándo y cómo el tenedor del contrato de financiamiento podrá acelerar el vencimiento del balance adeudado bajo dicho contrato. No obstante, el período de mora que dé lugar a la aceleración no será menor de quince (15) días ni mayor de tres (3) meses.
> El tenedor no podrá negarse a recibir el importe de uno o más plazos vencidos si el comprador le presenta el pago, a menos que el tenedor haya iniciado una reclamación judicial en los casos que ésta proceda. **La aceptación no conllevará la condonación del resto de los plazos atrasados ni de la deuda.** *Íd.* (Énfasis suplido).

Es menester recalcar que la ley viabiliza que el tenedor inste

un procedimiento de reposesión de mercancía antes del

incumplimiento de dos (2) pagos consecutivos por parte del

comprador, pero este proceder debe cumplir con las disposiciones

de la *Ley de Transacciones Comerciales*, Ley Núm. 208-1995 e

iniciará cuando la ley se haya acelerado bajo los parámetros

estatuidos en el inciso (b). *Íd.*, inciso (h).

Por último, la ley detalla que en ningún contrato de venta al

por menor a plazos se podrán incluir:

> [C]argos por financiamiento mayores de los que permitan los reglamentos aprobados por la Junta a tenor con lo dispuesto en Parte V de esta ley. El cargo por financiamiento incluirá todos los cargos incidentales a la investigación y otorgamiento de un contrato y para la extensión de crédito bajo el mismo o bajo un plan de cuenta rotativa. *Íd.*, sec. 750.

**-III-**

En síntesis, la apelante alegó que el foro primario incidió al

declarar ha lugar la *Moción Solicitando Sentencia Sumaria* porque la

deuda quedó extinguida por la entrega voluntaria del vehículo o que estaba en controversia el alcance de la entrega voluntaria. En específico, arguyó que la entrega voluntaria fungió como cumplimiento parcial de la obligación. Además, adujo que el acreedor incumplió con los requisitos legales establecidos en la Ley de Transacciones Comerciales, *supra*, y que no surge la cantidad adeudada del acuerdo. Planteó además que se incumplieron con las disposiciones sobre la sentencia sumaria dado a que Island Portfolio no incluyó en su solicitud de sentencia sumaria la evidencia de cobro, ejecución, disposición o aceptación de la deficiencia alegada, aunque esto fue cuestionado en la contestación a la *Demanda*, por lo cual quedarían controversias de hechos por resolver. Razones por las cuales sostuvo que procede que revoquemos al foro primario, declarando ha lugar su oposición a la sentencia sumaria, desestimando así la *Demanda* incoada.

Por su parte, Island Portfolio alegó que la señora Ramos Rivera no especificó concretamente las faltas en el procedimiento y solicitud de sentencia sumaria; es decir, no precisó exactamente cómo se incumplió con la Regla 36.3 de las de Procedimiento Civil, *supra*, y cómo la presentación de este petitorio le impidió defenderse apropiadamente con fundamentos válidos en derecho, por lo cual no sustentó definidamente qué controversias de hecho el foro recurrido debía aquilatar. Argumentó también que el contrato al por menor a plazos está regulado por la Ley Núm. 68 de 19 de junio de 1964, *supra*, y no por la Ley de Transacciones Comerciales, *supra*. Además, señaló que la aceleración de la deuda no incumplió con la normativa aplicable debido a que no se realizó de manera arbitraria o sin causa razonable. Especificó que existe un acuerdo de entrega voluntaria por tercero y que se le notificó a la apelante sobre la intención de disponer de la unidad luego de que esta fuese reposeída. Asimismo, sostuvo que se le facilitó una carta con el

nuevo balance adeudado luego de la venta. Detalló, a su vez, que la entrega voluntaria del vehículo no equivaldría al saldo total de la deuda.

Empero, previo a atender los señalamientos antes detallados como se nos exige, debemos determinar si la *Solicitud de Sentencia Sumaria* interpuesta por Island Portfolio cumplió con los requisitos de forma que exige la Regla 36.3 de las de Procedimiento Civil, *supra*. Además, debemos evaluar si existe una controversia de hechos que impida la resolución sumaria del asunto resuelto por el foro primario. De ser así, procederemos a señalar aquellos hechos que encontramos que están en controversia. De responder en la negativa, corresponde revisar *de novo* si el foro primario aplicó adecuadamente la norma jurídica pertinente a la controversia. Veamos.

Realizado tal examen, concluimos que, en efecto, Island Portfolio dio cumplimiento a los requisitos de forma establecidos por nuestras reglas. Alcanzamos tal conclusión al observar que, en su solicitud de sentencia sumaria, la apelada incluyó una relación enumerada de todos los hechos esenciales y pertinentes sobre los cuales alegó que no existía controversia sustancial. Además, estableció la relación de estos hechos con aquella evidencia que sometió en su apoyo. En cambio, la apelante presentó su oposición a la solicitud de sentencia sumaria en la cual mostró su posición sobre cada hecho propuesto por Island Portfolio como exigen nuestras reglas. No obstante, la señora Ramos Rivera no fue lo suficientemente específica sobre los errores concretos en la moción presentada y tampoco señaló con especificidad los defectos de forma de los cuales, según ella, adolecía la *Solicitud de Sentencia Sumaria*. Asimismo, no precisó cómo el dictar sentencia sumariamente le privaba de su derecho a defenderse.

Tras cumplir con nuestra función revisora y examinada la solicitud de sentencia sumaria, así como su oposición, advertimos que en el presente litigio no existen controversias de hechos que impidan la resolución sumaria de la controversia. De igual manera, tampoco encontramos que el foro primario haya errado en la aplicación de la norma jurídica pertinente de manera tal que sea inevitable revocarle. Por tanto, consideramos que los fundamentos por los cuales alcanzamos esta determinación están adecuadamente enunciados en el expediente de epígrafe. Repasemos.

Surge del expediente que la señora Ramos Rivera suscribió un contrato de venta a plazos con Popular Auto el 13 de enero de 2014 con el propósito de financiar un vehículo; este financiamiento fue de $45,685.52. Apéndice de la apelante, anejo I, págs. 7-8. El pacto mencionado contenía una cláusula que detallaba que, de haber incumplimiento en los pagos, la suma del principal, los intereses y otras obligaciones serían líquidas y exigibles automáticamente, sin necesidad de acción alguna por parte del vendedor o cesionario; el acreedor también podría reposeer y disponer de la unidad para satisfacer su acreencia, y, si esto resultara insuficiente, el deudor respondería por el balance restante o, de haber sobrante, se le facilitaría al comprador. *Íd.*

Así las cosas, el 7 de marzo de 2016, la señora Paloma Ramos Rivera entregó la unidad financiada a Popular Auto, suscribiendo así un *Acuerdo de Entrega Voluntaria por Tercero de Unidad Sujeta a Gravamen Mobiliario. Íd.*, anejo IV, pág. 37. Subsecuentemente, el 9 de marzo de 2016, Popular Auto le notificó a la apelante su intención de disponer del vehículo, dándole hasta el 28 de marzo de 2016 para saldar su deuda o suscribirse a un plan de pago. *Íd.*, anejo IV, pág. 38. Popular Auto procedió a vender la unidad por $13,200.00, quedando un balance pendiente de $13,753.35. *Íd.*, anejo VI, pág. 104. A causa de esto, se le reclamó el pago de la

cantidad restante a la señora Ramos Rivera el 3 de junio de 2016. *Íd.*, anejo IV, pág. 39.

Posteriormente, el 21 de enero de 2021, Popular Auto vendió la cuenta de la señora Ramos Rivera a Fairway. *Íd.*, anejo I, pág. 9. A su vez, el cesionario contrató a Island Portfolio para que gestionara el cobro de la deuda de $13,753.35. Así lo hizo la apelada, cursándole una notificación de cobro por correo certificado con acuse de recibo a la apelante el 31 de agosto de 2023; esta fue recibida y firmada. *Íd.*, anejo I, págs. 13-15. Por último, el representante de Island Portfolio, el señor Kevin Manuel Rosa Vélez suscribió una declaración jurada el 19 de enero de 2024 donde aseguró que la deuda aludida era líquida y exigible. *Íd.*, anejo I, págs. 16-17.

Entendemos que se evidenció mediante prueba documental lo siguiente: (1) el hecho de que hubo un contrato de financiamiento entre Popular Auto y la señora Ramos Rivera; (2) que un tercero entregó la unidad gravada al acreedor original antes de cumplir con lo pactado; (3) que Popular Auto cedió su cuenta a Fairway; (4) que Island Portfolio gestionó el cobro entero de la deuda de $13,753.35; (5) que la deuda es líquida y exigible, y (6) que la entrega voluntaria no fungió como relevo o condonación de lo adeudado.

A continuación, abundaremos sobre: (1) por qué somos del criterio de que la deuda es líquida y exigible, y (2) por qué la entrega voluntaria no supone la extinción del crédito.

En primer lugar, como hemos esbozado, una deuda líquida y exigible es aquella que es *determinada* y que se puede *pedir su cumplimiento*. La *liquidez* de la cantidad en este caso es evidente, debido a que pudo determinarse o calcularse con precisión a base de las obligaciones pactadas en el contrato y la ley, de manera que se detalló en varios documentos que la cuantía a pagar por la señora Ramos Rivera es de $13,753.35. Este déficit resultó luego de restar

la cantidad de la venta del vehículo gravado llevada a cabo por Popular Auto luego de la entrega voluntaria. Asimismo, la deuda es *exigible* porque, de acuerdo con lo pactado expresamente entre las partes, hay una cláusula de aceleración que se activó luego de que la apelante incumpliera con los pagos mensuales plasmados en el contrato. Esta cláusula puntualizaba que la totalidad de la deuda sería líquida y exigible automáticamente después de la aceleración, sin necesidad de intervención alguna por parte del primer acreedor o cesionario eventual.[19] La aceleración ocurrida en este caso no fue arbitraria o sin causa justificada, sino que se originó en el incumplimiento por parte de la señora Ramos Rivera en realizar sus pagos según lo concertado. Así, la deuda de la apelante con Fairway es líquida y exigible, por lo cual procedería una acción en cobro de dinero.

---

[19] Particularmente, el inciso J del contrato perfilaba que:

> En caso de que **ocurra o contin[ú]e ocurriendo cualquier causa de incumplimiento de las descritas anteriormente, las sumas de principal y sus intereses y todas las demás obligaciones del comprador bajo este Contrato quedarán líquidas y exigibles, automáticamente, sin que se requiera acción por parte del Vendedor o cesionario**, sin notificación al Comprador o a ninguna otra persona natural o jurídica, sin protesto, presentación, demanda o aviso, todos los cuales se renuncian expresamente en el caso de que ocurra o contin[ú]e ocurriendo cualquier otra causa de incumplimiento de las descritas anteriormente, el Vendedor o su cesionario tendrá todos los derechos y remedios a su favor contemplados bajo la Ley de Transacciones Comerciales (Ley Núm. 208 del 17 de agosto de 1995, según enmendada), y cualquier otra ley aplicable, incluyendo, pero no limitado [al] derecho a la posesión y disposición del equipo sin incoar un proceso judicial. Una vez reposea el equipo, el Vendedor o su cesionario podrá vender o disponer del equipo a través de cualquier procedimiento a tenor con la Ley de Transacciones Comerciales. El producto de dicha venta menos las cantidades permutadas, incluyendo el reembolso de los gastos incurridos por el Vendedor o su cesionario por motivas de la reposesión y venta del vehículo, será aplicado al pago de las obligaciones del Comprador bajo este Contrato. El sobrante, si alguno, será pagado al comprador, a menos que por ley se disponga otra cosa. Los derechos y remedios del Vendedor y su cesionario bajo este Contrato son adicionales a cualesquiera otros remedios o derechos concedidos por la ley y podrán hacerse efectivos sucesiva o concurrentemente. El Comprador será responsable al Vendedor o su cesionario de cualquier deficiencia que pueda surgir en relación con sus obligaciones bajo este Contrato una vez el vendedor haya dispuesto del equipo y deducido los gastos razonables incurridos por el cobro de la obligación garantizada. Apéndice de la apelante, anejo I, pág. 8. (Énfasis suplido).

En segundo lugar, es imperativo acentuar que la Ley Núm. 68, *supra*, la cual representa el derecho aplicable para el contrato particular celebrado por las partes en esta instancia, dispone expresamente que *la aceptación de algún pago ni implica la condonación de los demás plazos atrasados ni de la deuda.* 10 LPRA sec. 749 (b). En este caso, la señora Ramos Rivera arguye que la aceptación del vehículo gravado por parte del acreedor original figura como un cumplimiento parcial que extinguió la deuda. Esto no es correcto en derecho toda vez que la propia ley aplicable dictamina que un pago parcial (en este caso, la entrega voluntaria del bien, que resultó insuficiente para satisfacer lo debido cabalmente) no acarrea que el crédito se vuelva obsoleto o que el acreedor o cesionario le esté condonando la deuda al comprador. Igualmente, el contrato ante nuestra consideración traza las circunstancias en las cuales la deuda sería declarada vencida y sería exigible en su totalidad por el acreedor o cesionario, lo cual contradice la postura de la apelante sobre la extinción de lo debido.[20]

---

[20] El inciso I del pacto referenciado precisa que:

> El Vendedor podrá acelerar el vencimiento del balance adeudado bajo el Contrato y exigir el pago total de esa suma, que será exigible desde ese momento, en cualquiera de las siguientes circunstancias:
> 1. Si usted dejase de pagar 3 plazos consecutivos;
> 2. Si usted dejase de pagar 1 o más pagos vencidos, si en 2 o más ocasiones anteriores había dejado de pagar 2 o más pagos consecutivos y en dichas ocasiones se había rehabilitado al pagar todos los plazos vencidos;
> 3. Si usted, habiendo dejado de pagar 1 o más plazos consecutivos, presente un pago parcial o la suma vencida, y después de efectuar ese pago parcial, continúa pagando los plazos futuros a tal vencimiento, pero sigue una mora con respecto o recurrente de la suma vencida durante 3 plazos consecutivos posteriormente a la fecha en que se efectuó el pago parcial;
> 4. Si usted dejase de cumplir con cualquiera otra de las obligaciones bajo este Contrato;
> 5. Si el equipo queda sujeto o a juicio del Vendedor pudiese quedar sujeto a cualquier gravamen o de radicarse un proceso voluntario o involuntario de quiebra por Usted o en su contra, así como cualquier procedimiento en arreglo y transacción con sus acreedores o que resulte en el nombramiento de un síndico o de un depositario de sus bienes.
> 6. Si el equipo sufriese daños o desperfectos que [redujesen] su valor a la mitad de su precio original. *Íd.*, anejo I, pág. 8.

La señora Ramos Rivera es aún deudora de Fairway y debe saldar el importe correspondiente.

Concluimos, pues, que el foro primario no incidió al declarar ha lugar la *Solicitud de Sentencia Sumaria*, toda vez que no estaba en controversia la existencia, liquidez y exigibilidad de la deuda de la señora Ramos Rivera con Fairway.

**-IV-**

Por los fundamentos previamente expuestos, se **confirma** la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones